IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SOPHIE TAVASCI, as PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH CLAIM OF DANIEL
TAVASCI, deceased,

       Plaintiff,

v.                              Case No. 1:16-cv-00461

BRADFORD CAMBRON; ROB KAMERMANS;
RANDAL BROWN; NEW MEXICARE, INC. d/b/a
GUADALUPE COUNTY HOSPITAL; THE GEO
GROUP, INC. d/b/a GUADALUPE COUNTY
CORRECTIONAL FACILITY; CORIZON HEALTH,
INC.; VINCENT HORTON, Warden; CHRISTOPHER
AGUILAR, Behavioral Health Management; DR.
SISNEROS; ANTOINETTE LUCERO; M. MIRELES;
and MARIO Z. OVIEDO,

       Defendants.

## NOTICE OF REMOVAL

Defendants Corizon Health, Inc. and Dr. Sisneros (hereinafter collectively referred to as "Corizon") by and through their counsel of record, Chapman and Charlebois, P.C., (Nicole M. Charlebois and M. Clea Gutterson), hereby file this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, and in support thereof, state as follows:

1.    Plaintiff Sophie Tavasci ("Plaintiff") filed her Second Amended Complaint for Wrongful Death and Civil Rights Violations ("Complaint") in the Thirteenth Judicial District, Valencia County, State of New Mexico, in Cause No. D-1314-CV-201600108 (hereinafter "State Court Action") on April 28, 2016.  (See Plaintiff's Complaint, attached hereto as Exhibit A).

2.    In her Complaint, Plaintiff alleges violations of the civil rights of the decedent, Daniel Tavasci, against Corizon and Sisneros. Specifically, she claims Eighth

Amendment Constitutional violations for failure to provide medical care and treatment to Daniel Tavasci while he was housed at the Guadalupe County Correctional Facility medical facility managed by Corizon. She alleges Dr. Sisneros' care at the facility constituted cruel and unusual punishment.   (*Id.* at Count Six).

3.    All Defendants who have been properly joined and served consent to the removal of this action.

4.    Federal question jurisdiction is present under 28 U.S.C. § 1331and 28 U.S.C. § 1441.

5.    Less than thirty (30) days have passed since Defendants Corizon and Sisneros received service of the initial pleadings on this matter. (*See* Register of Actions for the State Court Action, hereto attached as Exhibit B)

6.    This case may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. §§ 1441(c) and 1446.

7.    By and through this Notice of Removal, these Defendants remove all claims asserted against them on the basis of federal question jurisdiction, which is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1441.

8.    Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal is being concurrently served upon the Plaintiff on this date.

9.    Pursuant to 28 U.S.C. § 1446(d), these Defendants are concurrently filing a Notice of Filing of Removal in the State Court Action, a copy of which is hereto attached as Exhibit C.

10.   In addition to the Notice of Filing Notice of Removal in the State Court Action, Defendant is concurrently filing an Entry of Appearance in the State Court Action on this date, a copy of which is hereto attached as Exhibit D.

11.   Pursuant to 28 U.S.C. § 1446(a) and D.N.M.LR-Civ. 81.1(a), all process, pleadings, and orders from the state court action will be filed with this Court in a separate Transmittal of State Court Record within twenty-eight days (28) of this Notice.

12.   A Civil Cover Sheet for this Court is hereto attached as Exhibit E.

**WHEREFORE**, the removing Defendants give notice the above-styled action, which was pending in the Thirteenth Judicial District, Valencia County, State of New Mexico, as Cause No. D-1314-CV-201600108 is removed to this Court.

Respectfully Submitted,

**CHAPMAN AND CHARLEBOIS, P.C.**

*/s/M. Clea Gutterson*
Nicole M. Charlebois
M. Clea Gutterson
P.O. Box 92438
Albuquerque, NM 87199
Tel:  (505) 242-6000
nicole@cclawnm.com
clea@cclaw.com
*Attorneys for Defendants*
*Corizon Health   Inc. and Dr. Sisneros*

3

I HEREBY CERTIFY that on the 20ᵗʰ day of May, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing, and by first class mail to the following counsel of record:

Frances C. Carpenter
Law Office of Frances Crocket
925 Luna Circle NW
Albuquerque, NM 87102
(505) 314-8883
*Attorneys for Plaintiff*


*/s/M. Clea Gutterson*
M. Clea Gutterson

FILED IN MY OFFICE
DISTRICT COURT CLERK
4/28/2016 1:52:48 PM
PHILIP ROMERO

AY

**STATE OF NEW MEXICO**
**COUNTY OF VALENCIA**
**THIRTEENTH JUDICIAL DISTRICT COURT**

**SOPHIE TAVASCI, as PERSONAL REPRESENTATIVE**
**OF THE WRONGFUL DEATH CLAIM OF DANIEL**
**TAVASCI, deceased,**

       **Plaintiff,**

**vs.**                       No. D-1314-CV-201600108

**BRADFORD CAMBRON; ROB KAMERMANS;**
**RANDAL BROWN; NEW MEXICARE, INC. d/b/a**
**GUADALUPE COUNTY HOSPITAL; THE GEO**
**GROUP, INC. d/b/a GUADALUPE COUNTY**
**CORRECTIONAL FACILITY; CORIZON HEALTH,**
**INC.; VINCENT HORTON, Warden; CHRISTOPHER**
**AGUILAR, Behavioral Health Manager; DR.**
**SISNEROS; ANTOINETTE LUCERO; M. MIRELES;**
**and MARIO Z. OVIEDO,**

                                            **JURY REQUESTED**

       **Defendants.**

<u>**SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH**</u>
<u>**AND CIVIL RIGHTS VIOLATIONS**</u>

      Plaintiff, Sophie Tavasci, through undersigned counsel, alleges and complains as

follows:

<u>**I. PARTIES, JURISDICTION, AND VENUE**</u>

     1.     Plaintiff Sophie Tavasci (hereinafter "Plaintiff Tavasci") is the personal

representative for the wrongful death claim of Daniel Tavasci, who was fifty-four years old at the

time of his death and a resident of Guadalupe County.   Plaintiff Tavasci was appointed (case

number D-1314-CV-2014-00950, in Valencia County, State of New Mexico) as personal

representative for the wrongful death claim of Daniel Tavasci in accordance with NMSA 1978,

Section 41-2-1 et seq., on December 5, 2014.



2.     Upon information and belief, Defendant Bradford Cambron (hereinafter "Defendant Bradford") is a resident of Guadalupe County, New Mexico.

3.     At all times material to this complaint, Defendant Cambron was a physician employed by Defendant New Mexicare, Inc. d/b/a Guadalupe County Hospital (hereinafter "Defendant GCH").

4.     Upon information and belief, Defendant Rob Kamermans (hereinafter "Defendant Kamermans") is a resident of Guadalupe County, New Mexico.

5.     At all times material to this complaint, Defendant Kamermans was a physician employed by Defendant GCH.

6.     Upon information and belief, Defendant Randal Brown (hereinafter "Defendant Brown") is a resident of Guadalupe County, New Mexico.

7.     At all times material to this complaint, Defendant Brown was a physician employed by Defendant GCH.

8.     Defendant GCH is a hospital operated by New Mexicare, Inc., a Domestic Non-Profit corporation, authorized to do business and doing business in Guadalupe County, New Mexico.   GCH can be served through its registered agent, Christina R. Campos, 117 Camino De Vida, Suite 100, Santa Rosa, NM 88435.

9.     Defendant The GEO Group d/b/a Guadalupe County Correctional Facility (hereinafter "GCCF") is a foreign corporation, authorized to do business and doing business operating a detention center located in Guadalupe County, New Mexico.   At all times material hereto The GEO Group was responsible for the operation and management of GCCF.

2

10.     Defendant Corizon Health, Inc. (hereinafter "Defendant Corizon"), is a foreign corporation authorized to do business and doing business in the State of New Mexico, managing the medical facility at GCCF.

11.     Upon information and belief, Defendant Vincent Horton (hereinafter "Defendant Horton") is a resident of Guadalupe County, New Mexico.

12.     At all times material here to Defendant Horton was the warden in charge of GCCF's facilities and operations.

13.     Upon information and belief, Defendant Christopher Aguilar (hereinafter "Defendant Aguilar") is a resident of Guadalupe County, New Mexico.

14.     At all times material to this complaint, Defendant Aguilar was the Behavioral Health Manager employed by either Defendant GCCF, GEO, or Defendant Corizon.

15.     Upon information and belief, Defendant Dr. Sisneros (hereinafter "Defendant Sisneros") is a resident of Guadalupe County, New Mexico.

16.     At all times material to this complaint, Defendant Sisneros was a doctor, employed by Defendant GCCF, GEO, or Defendant Corizon.

17.     In February 2014, GCH was contracted to provide healthcare to GCCF located in Guadalupe County, New Mexico.

18.     Upon information and belief, Defendant Antoinette Lucero (hereinafter "Defendant Lucero") is a resident of Guadalupe County, New Mexico.

19.     At all times material to this complaint, Defendant Lucero was a nurse, employed by Defendant GCH.

3

20.     Upon information and belief, Defendant M. Mireles (hereinafter "Defendant Mireles") is a resident of Guadalupe County, New Mexico.

21.     At all times material to this complaint, Defendant Mireles was an officer employed by either GCCF or GEO.

22.     Upon information and belief, Defendant Mario Z. Oviedo (hereinafter "Defendant Oviedo") is a resident of Guadalupe County, New Mexico.

23.     At all times material to this complaint, Defendant Oviedo was an officer employed by either GCCF or GEO.

24.     Some employees who had contact with Daniel Tavasci were law enforcement officers within the meaning of NMSA 41-4-12.

25.     Immunity is waived for the actions described herein under Sections 41-4-6 (operation of a building); 41-4-9 (operation of "clinic, dispensary, infirmary or like facility") and 41-4-12 (deprivation of rights under state and federal constitution and a violation of NMSA § 27-7-30 (duty to report neglect) and NMSA Section 24-10B-8 and 24-10B-5.

26.     Given the above, jurisdiction and venue are proper.

## II. GENERAL ALLEGATIONS

27.     Daniel Tavasci suffered from a variety of medical conditions and was being treated with a variety of medications.

28.     Upon information and belief, Tavasci had a history of misconduct for medical drug abuse and as recently as September of 2012 he had been diagnosed with major depressive disorder and treated with Prozac.

4

29.     Notwithstanding this information, upon information and belief, Tavasci was permitted to keep the following medications on his person, in his cell:

a.     Potassium (30 packets)

b.     Metformin (60 tablets)

c.     Zantac (60 packs)

d.     Losartan (30 day supply)

e.     Nitrogycerin

f.     Neurontin (800 mg)

g.     Clonidine (0.3 mg)

h.     Docusate (100 mg)

i.     Forosemide (20 mg)

j.     Furosemide (40 mg)

k.     Glipizide (10 mg)

l.     Ibuprofen (600 mg)

m.     Liprinosil (40 mg)

n.     An albuterol inhaler

o.     Fiber Lax (62 mg)

p.     Lactulose (15 mg)

q.     Allopurinol (300 mg)

r.     Amlodipine (1 mg)

s.     Ecotrin (81 mg)

t.     Tenormin (50 mg)

5

u.    Calcium (625 mg)

v.    Zantac (150mg)

w.    Zocor (20 mg)

x.    Nasal spray

30.    Upon information and belief Defendants GEO, Guadalupe County Correctional Facility, Corizon, Horton, Aguilar, Dr. Sisneros, Lucero, Mireles, and Oviedo failed to make reasonable accommodations to ensure the safe treatment, housing, discipline, and transportation of a physically and mentally disabled individual suffering from qualifying disabilities.

31.    Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.   Section 504 of the Rehabilitation Act ("RA") provides that "No otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of , or be subjected to discrimination under any program or activity received Federal financial assistance...." 29 U.S.C. § 749(a).

32.    Although the ADA does not define "programs, services or activities," the ADA provides that "'program or activity' means all of the operations of ... a department, agency ... or other instrumentality of a State or of a local government[.]" 29 U.S.C.  § 749(b)(1)(A).    The ADA defines "disability" with respect to an individual as "(A)   a physical or mental impairment that substantially limits one or more major life activities of such   individual; (B) a record of such impairment; or (C) being regarded as having such an   impairment...." 42 U.S.C. § 12102(1).

6

"[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

33.     On or about February 19, 2014, Tavasci was seen for a routine clinic visit during which he was accused of assaulting Dr. Sisneros by rising from his chair and "[swinging] his right hand…while holding a reading book." Dr. Sisneros "called the correctional officer into the room to assist and remove [Tavasci] from the exam room."

34.     Following that incident, upon information and belief, Tavasci met with J. Yearley, LPN, a member of the prison's behavioral health staff for a Pre Lockdown Evaluation which reflected his emotional state as agitated and depressed. This document was signed off by Defendant Sisneros.

35.     On February 19, 2014, upon information and belief, and as stated by Behavior Health Manager, Defendant Aguilar, following his meeting with Nurse Yearly, Tavasci was moved from a cell in general population to a cell in segregation.

36.     Upon information and belief, "[t]he Segregation Inmate Mental Health Examination was not completed due to [Tavasci] being taken to the hospital." Placement in Segregation without this Mental Health Examination is contrary to policy.

37.     Upon information and belief, Defendant Sisneros knew of, or should have known of, Tavasci's history of and treatment for major depression and medication drug abuse at the time Tavasci was placed into segregation.

7

38.     Upon information and belief, Defendant Sisneros also knew that Tavasci had been prescribed, and was permitted to carry with him, a large number of medications as stated in paragraph 23 herein.

39.     Upon information and belief, Defendant Sisneros knew, or should have known, that a person could use the medications Tavasci had in his possession to commit suicide or cause himself serious bodily harm.

40.     Notwithstanding Defendant Sisneros' knowledge, Tavasci was permitted to keep a large quantity of prescription medication on his person while in segregation.

41.     Upon information and belief, sometime after his transfer to segregation and prior to 5:00 AM on February 20, 2014, Tavasci took a large number of medications that had been prescribed to him and that he had been allowed to keep on his person ("KOP").

42.     Upon information and belief, on or about February 20, 2014, at approximately 5:00 AM Sergeant Jose Flores was conducting an inmate count and asked Tavasci stand up for the count.   Tavasci did not respond and remained lying motionless, face-down on his bunk.

43.     Sergeant Flores called for assistance and Lieutenant Jose Baca responded. Lieutenant Baca called for medical assistance because Tavasci remained unresponsive.

44.     Licensed Practical Nurse Rose Keaton came to Tavasci's cell, placed him in a gurney, and moved him to the infirmary unit.

45.     Lieutenant Baca ordered staff to arrange for medical transport, and corrections staff called for an ambulance at approximately 5:34 AM, however ambulance records show they arrived at the facility at 5:32 AM.

8

46.     Upon information and belief, multiple empty blister packs of medications were found in Tavasci's cell.

47.     Upon information and belief, Sergeant Flores gathered the "keep on person" medicine in Tavasci's cell, secured the cell, and gave the medicine he collected to Registered Nurse RN Keagan for safekeeping.

48.     Nearly all of the blister packs of Tavasci's keep on person medicine were empty.

49.     Upon information and belief, the nature of Tavasci's medical condition was clearly known to the prison and infirmary staff.

50.     In spite of this knowledge, upon information and belief, the emergency responders were not informed of a possible overdose as there is no documentation of medication overdose in the EMS record.

51.     Emergency responders administered oral glucose and glucagon IM to Tavasci on the way to the hospital.

52.     Upon information and belief, emergency responders and Guadalupe County Hospital were never informed of the facts as stated in Paragraphs 23, 31 and 33.

53.     Upon information and belief, Registered Nurse Antoinette Lucero requested Tavasci's medical history from GCCF at approximately 6:30 AM.

54.     Upon information and belief, Defendant Cambron assumed care of Tavasci at approximately 6:43 AM at Guadalupe County Hospital.

55.     By approximately 7:00 AM, Tavasci had regained consciousness and was combative with GCH and GCCF personnel.

9

56.    Upon information and belief, Defendant employees of GCCF/Corizon faxed Tavasci's GCCF medical records, including a prescription list, to the emergency department at approximately 7:13 AM on February 20, 2014, at which time Tavasci's doctors ordered laboratory tests.

57.    Upon information and belief, blood tests were performed on Mr. Tavasci at approximately 7:13 AM.

58.    Upon information and belief, at 7:20 AM, Tavasci had an EKG which showed abnormal results.

59.    Upon information and belief, at 7:20 AM, the lab results showing a high potassium level of 5.9 "verified by repeat analysis" was reported to Antonia [sic] Lucero.

60.    The labs also showed that his sodium level was 146, his BUN level was 24, his creatinine was three times the normal level, and his anion gap was 28.5.    In addition, his white blood cell count was elevated.

61.    Notes from Tavasci's GCH medical records show that staff suspected or were aware of a possible overdose on medications that included metformin, potassium supplements, Zantac, and simvastatin as documented by Dr. Kamermans and Nurse Lucero.

62.    Tavasci was given an EKG, saline, glucagon, sodium chloride via IV, and a catheter.    At no time during his hospitalization did Tavasci urinate.

63.    Tavasci's lab work, in addition to an abnormal EKG, showed that he was exhibiting signs of hyperkalemia (high potassium levels).    However, Defendants Cambron, Kamermans, and Brown did nothing in response, and neither did any other medical staff member.

64.     Upon information and belief, Tavasci's doctors did not change his treatment after receipt of the GCCF medical records, or after receipt of the lab test results showing high potassium, but continued to administer sodium chloride by IV, give saline and dextrose injection, and monitor his blood sugar closely.

65.     Upon information and belief, at approximately 8:47 AM, corrections officers in GCH told hospital staff that Tavasci had admitted to taking a lot of pills.

66.     Upon information and belief, Defendant Oviedo was told he would be transporting Tavacsi from GCH to Los Lunas.   In preparation for the transport, Defendant Oviedo and Defendant Mireles assembled Tavasci's property from his cell.

67.     Upon information and belief, during the process of packing Tavasci's property for transport, Defendant Mireles discovered a roll of toilet paper that allegedly had what appeared to be a written schedule of the officers' times for Unit checks as they were being performed.   Also found was a deodorant cap with a small pill and some powder residue in it.

68.     Upon information and belief, Defendant Oviedo instructed Defendant Mireles to discard these items, which Defendant Mireles did by flushing them down the toilet, thereby destroying, at the very least, important evidence as to Mr. Tavasci's condition and what occurred prior to his death.

69.     At approximately 11:45 AM, GCH staff was notified that Tavasci was being transferred from GCCF to a different prison facility.   At approximately 12:03 PM, Nurse Lucero entered Tavasci's room to get his signature on the transport order.   Nurse Lucero noted that Tavasci was irritable.

70.     Nurse Lucero then checked Tavasci's blood pressure, which was only 46/24.

11

71.     GCH staff placed Tavasci in the trendelenburg position and Defendant Kamermans assumed responsibility for Tavasci's care.

72.     Tavasci's breathing became agonal and he lost consciousness at approximately 12:15 PM.

73.     GCH then staff intubated Tavasci, administered epinephrine, and performed CPR.

74.     At approximately 12:43 PM, Defendant Kamermans declares Tavasci dead and stops resuscitative efforts.

75.     An autopsy confirmed that Tavasci died from hyperkalemia.   The autopsy also showed that Tavasci had twenty-one potassium pills in his stomach and two potassium pills in his esophagus, for a total of twenty-three undissolved potassium pills.

76.     In spite of the information provided and the lab and EKG results provided to the treating team, it was below the standard of care for Defendants to fail to initiate life-saving interventions for Tavasci' hyperkalemia, which intervention would almost certainly have prevented his death.

77.     At all times material hereto, the individually named Defendants were employees and/or agents of Defendants acting under the direction and control of Defendants and acting within the course and scope of their employment and/or agency.

78.     Plaintiff seeks damages for the death of Daniel Tavasci, physical and mental injuries he sustained prior to his death as the result of the medical negligence and inadequate medical treatment he received from named Defendants.

79.     Plaintiff's claims for damages arise under the United States Constitution and the laws of the State of New Mexico.

12

## IV. CLAIMS FOR RELIEF

### COUNT ONE: Negligence of Defendant Kamermans

80.     Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

81.     Defendant Kamermans held himself out as a specialist in emergency medicine, and undertook to care for Daniel Tavasci in this specialized field.   He was under a duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified emergency medical provider practicing under similar circumstances, giving due consideration to the locality involved.

82.     Defendant Kamermans was negligent in the care, management, and treatment of Tavasci.

83.     Defendant Kamermans failed to apply the knowledge, skill, and care ordinarily used by reasonably well-qualified physicians practicing under similar circumstances.

84.     Such acts or omissions include, but are not limited to: negligence in his care, management, and treatment of Tavasci; failing to recognize, treat, and evaluate Tavasci's emergency condition in direct contradiction to his duties as a physician; disregarding Tavasci's emergency condition in direct contradiction to his duties as a physician; and any other manner revealed in discovery.

85.     Defendant Kamerman's negligent care, management, and treatment of Tavasci caused Tavasci's death and damages.

86.     Defendant Guadalupe County Hospital is liable for the acts of their contractors and employees, including but not limited to Defendant Kamermans.

## COUNT TWO: Negligence of Defendant Cambron

87.    Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

88.    Defendant Cambron held himself out as a specialist in emergency medicine, and undertook to care for Tavasci in this specialized field.   He was under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified physicians practicing under similar circumstances, giving due consideration to the locality involved.

89.    Defendant Cambron was negligent in the care, management, and treatment of Tavasci.

90.    Defendant Cambron failed to apply the knowledge, skill, and care ordinarily used by reasonably well-qualified physicians practicing under similar circumstances.

91.    Such acts or omissions include, but are not limited to: negligence in his care, management, and treatment of Tavasci; failing to recognize, treat, and evaluate Tavasci's emergency condition in direct contradiction to his duties as a physician; disregarding Tavasci's emergency condition in direct contradiction to his duties as a physician; and any other manner revealed in discovery.

92.    Defendant Cambron negligent care, management, and treatment of Tavasci caused Tavasci's death and damages.

93.    Defendant Guadalupe County Hospital is liable for the acts of their contractors and employees, including but not limited to Defendant Cambron.

14

### COUNT THREE: Negligence of Defendant Brown

94.     Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

95.     Defendant Brown held himself out as a specialist in emergency medicine, and undertook to care for Tavasci in this specialized field.   He was under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified physicians practicing under similar circumstances, giving due consideration to the locality involved.

96.     Defendant Brown was negligent in the care, management, and treatment of Tavasci.

97.     Defendant Brown failed to apply the knowledge, skill, and care ordinarily used by reasonably well-qualified physicians practicing under similar circumstances.

98.     Such acts or omissions include, but are not limited to: negligence in his care, management, and treatment of Tavasci; failing to recognize, treat, and evaluate Tavasci's emergency condition in direct contradiction to his duties as a physician; disregarding Tavasci's emergency condition in direct contradiction to his duties as a physician; and any other manner revealed in discovery.

99.     Defendant Brown's negligent care, management, and treatment of Tavasci caused Tavasci's death and damages.

100.    Defendant Guadalupe County Hospital is liable for the acts of their contractors and employees, including but not limited to Defendant Brown.

## COUNT FOUR: Negligence of Defendant Lucero

101.    Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

102.    Defendant Lucero held herself out as a nurse in emergency medicine, and undertook to care for Tavasci in this specialized field.   She was under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified nurses practicing under similar circumstances, giving due consideration to the locality involved.

103.    Defendant Lucero was negligent in the care, management, and treatment of Tavasci.

104.    Defendant Lucero failed to apply the knowledge, skill, and care ordinarily used by reasonably well-qualified nurses practicing under similar circumstances.

105.    Such acts or omissions include, but are not limited to: negligence in her care, management, and treatment of Tavasci; failing to recognize, treat, and evaluate Tavasci's emergency condition in direct contradiction to her duties as a nurse; disregarding Tavasci's emergency condition in direct contradiction to her duties as a nurse; and any other manner revealed in discovery.

106.    Defendant Lucero's negligent care, management, and treatment of Tavasci caused Tavasci's death and damages.

107.    Defendant Guadalupe County Hospital is liable for the acts of their contractors and employees, including but not limited to Defendant Lucero.

16

## COUNT FIVE: Negligence of Defendant Guadalupe County Hospital

108.    Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

109.    Defendant GCH is liable for the acts of their contractors and employees, including, but not limited to, Defendants Kamermans, Cambron, and Brown.

110.    Defendant GCH and its staff were under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified hospitals, medical facilities, and medical providers practicing under similar circumstances, giving due consideration to the locality involved.

111.    Defendant GCH, acting through its employees, agents, apparent agents, or contractors failed to exercise ordinary care and failed to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified healthcare providers, hospitals, and hospital-related business operating under similar circumstances, giving due consideration to locality involved.

112.    Such acts or omissions include, but are not necessarily limited to: negligent hiring, training, supervision, credentialing, evaluating, monitoring, or retention of healthcare employees, contractors, nurses and physicians on hospital staff; inadequate or inappropriate policies and procedures; inadequate or inappropriate medical support in a hospital providing emergency medical care; and any other manner revealed in discovery.

113.    Defendant GCH, acting through their employees, agents, apparent agents, or contractors failed to exercise ordinary care and failed to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified healthcare providers, nurses,

17

nurse assistants, technicians, etc., operating under similar circumstances, giving due consideration to locality involved.

114.    Such acts or omissions include, but are not necessarily limited to: negligence in the care, management, and treatment of Tavasci; failing to appropriately respond to Tavasci's emergency condition in direct contradiction of their duties as nurses, nurse assistants, technicians, etc.; failing to adequately and appropriately monitor Tavasci's medical condition; and any other manner revealed in discovery.

115.    The negligence of Defendant GCH and its employees, agents and apparent and/or ostensible agents was a cause of Mr. Tavasci's death and Plaintiff's damages.

**COUNT SIX: (§1983 Eighth Amendment Violation –**
**Failure to Provide Medical Care and Treatment**
**(Against GCCF, GEO, Corizon, Horton, Aguilar, Sisneros – "Defendants")**

116.    Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

117.    At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of state law.

118.    Defendants are persons under 42 U.S.C. § 1983.

119.    Defendants had a custom, policy, or practice of acting knowingly and with deliberate inference in denying obviously necessary medications, medical services, and hospitalizations to inmates at GCCF, including Tavasci.

120.    Defendants all knew of Tavasci's serious medical condition.  Nonetheless, with deliberate indifference to Tavasci's Eighth Amendment constitutional right to be free of cruel and

unusual punishment, these Defendants made no effort to obtain adequate and timely medical treatment for Tavasci, including treatment for hyperkalemia.

121.    Defendants not only ignored the obviously serious medical needs of Tavasci but also placed him at risk of substantial physical harm and death.

122.    The acts and omissions of Defendants were within the scope of their official duties and employment.

123.    The acts and omissions of Defendants were the legal and proximate cause of Tavasci's death.

124.    Defendants, both on their own and through their physicians, nurses, other health center staff, and administrators, had an official policy, custom, or practice that was deliberately indifferent to Tavasci's Eighth Amendment rights.

125.    Defendants' unconstitutional policies, customs or practices were the legal and proximate cause of Tavasci's death.

126.    The acts and omissions of each Defendant caused Tavasci's death and Plaintiff's damages.

127.    Through the acts and omissions described herein, Defendants intentionally deprived Tavasci of the securities, rights, privileges, liberties, and immunities guaranteed by the United States Constitution, and caused his death.

### COUNT SEVEN: State Law Claim for Negligent Medical Care and Treatment
### (Against Defendants GCCF, GEO, Corizon, Horton, Aguilar, Sisneros – "Defendants")

128.    Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

129.    All named Defendants herein had a duty to provide reasonable medical care and treatment to inmates at GCCF, including Tavasci.

130.    All named Defendants breached their duty of care and were negligent when they failed to provide Tavasci with reasonably obtainable and necessary medical treatment.

131.    Defendants were at all times relevant hereto were employees of Defendant GCCF.

132.    Defendants acted on their own behalf and on behalf of Defendant GCCF when they committed the acts giving rise to the claims against them contained in this Complaint and which may later be learned of through discovery.

133.    Defendant GCCF is liable to Plaintiff for any harm caused by employees acting on its behalf.

134.    Because Defendants acted not only on their behalf, but also on behalf of Defendant GCCF when they committee wrongful acts against Tavasci, Defendant GCCF is liable to Plaintiff for the harm caused by those acts or omissions.

135.    Defendants' negligence proximately caused Tavasci's significant physical and mental pain and suffering and death.

## COUNT EIGHT – Spoliation of Evidence
## (Against Defendants Oviedo and Mireles)

136.    All previous paragraphs are incorporated herein by reference.

137.    Defendants Oviedo and Mireles intentionally disposed of, destroyed, mutilated or significantly altered evidence relevant to this lawsuit by purposely disposing of evidence, specifically a roll of toilet paper containing allegedly what appeared to be a written schedule of the officers' times for unit checks as they were being performed, the contents of a deodorant cap, a pill and powder residue, by flushing these items down the toilet.

138.   Defendants Oviedo and Mireles knew there would be a lawsuit or the potential for a lawsuit.

139.   Defendants Oviedo and Mireles caused the evidence to be disposed of and destroyed.

140.   By their conduct Defendants Oviedo and Mireles' intent was to disrupt or defeat a potential lawsuit as well as to cover up the facts that underline this lawsuit.

141.   The destruction or alteration of the evidence materially impacts Plaintiff's ability to prove portions of her case.

142.   Plaintiff has suffered damages as a result of the destruction of this evidence.

### COUNT NINE - Discrimination in Violation of the ADA
### (Americans with Disabilities Act) Resulting in Wrongful Death

143.   All previous paragraphs are incorporated herein by reference.

144.   Defendants GEO, Guadalupe County Correctional Facility and Corizon are public entities as defined by the Americans with Disabilities Act, 42 U.S.C. § 12131(1)(B) (1990).

145.   Defendants GEO, Guadalupe County Correctional Facility and Corizon do not have sovereign immunity for claims arising under the Americans with Disabilities Act. 42 U.S.C. § 12202 (1990).

146.   Daniel Tavasci was a qualified individual with a disability as defined by the Americans with Disabilities Act, 42 U.S.C. § 12131(2) (1990).

147.   On the basis of his disability, Daniel Tavasci was denied the benefits of services, programs, and activities of Defendants GEO, Guadalupe County Correctional Facility and Corizon including but not limited to the benefits of: a mental health evaluation prior to being placed in segregated, confinement, protective, secluded housing, being allowed, despite having diminished

21

capacity and mental health issues, to keep on his person the above listed drugs, encounters with correction officers, medical staff, and other staff/employees properly trained to deal with citizens with mental illnesses; being treated with dignity by the government entity sworn to protect its citizens; and being given proper accommodation given his disability in the course and duration of the correction officers, medical staff, and other staff/employees encounters with Mr. Tavasci.

148.    On the basis of his disability, the Defendants GEO, Guadalupe County Correctional Facility and Corizon discriminated against Daniel Tavasci by choosing not to provide adequate protection and accommodation for inmates with mental illnesses.

149.    On the basis of his disability, the Defendants GEO, Guadalupe County Correctional Facility and Corizon discriminated against Daniel Tavasci by choosing to provide him with a service that was not as effective in affording equal opportunity to obtain the same result as that provided to individuals without mental disabilities.

150.    Defendants GEO, Guadalupe County Correctional Facility and Corizon decision not to accommodate Mr. Tavasci's disability was made with deliberate indifference to Tavasci's rights.

151.    Defendants GEO, Guadalupe County Correctional Facility and Corizon decision to discriminate against citizens with mental illness like Mr. Tavasci directly and proximately caused Tavasci's wrongful death and damages as set forth herein, including but not limited to the loss of the value of his life, lost enjoyment of his life, pain and suffering, and lost household services.

152.    By its discriminatory practices, Defendants GEO, Guadalupe County Correctional Facility and Corizon acted intentionally, maliciously or with reckless indifference and an award of

punitive damages is necessary to punish this conduct and prevent deprivation of rights to citizens in the future.

153.    Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to ask the court for reasonable attorney's fees and litigation expenses if Plaintiff prevails.

## DAMAGES

154.    Plaintiff incorporates and adopts by reference all the facts and allegations contained in the preceding paragraphs of this Complaint.

155.    As a direct and proximate result of the forgoing events, Daniel Tavasci died. Accordingly, the Estate of Daniel Tavasci is entitled to an award of damages including, but not limited to, the following specific items:

        a.    The reasonable expenses of necessary medical care and treatment and funeral and burial;

        b.    The pain and suffering experienced by the deceased between the time of injury and death;

        c.    The value of the deceased's life apart from his earning capacity;

        d.    The mitigating or aggravating circumstances attending the wrongful act, neglect or default;

        e.    The loss to the beneficiaries of other expected benefits that have a monetary value;

        f.    Attorney fees and costs; and

        g.    Other damages contemplated by law in amounts to be determined at trial.

156.    As a direct and proximate result of the acts and omissions as detailed in the Complaint, Mr. Tavasci suffered a loss of chance of survival.

WHEREFORE, Plaintiff prays for judgment as follows: against Defendants for injuries and damages to Plaintiff in a sum to be determined and fixed by the trier of fact as to be fair and just, for the reasonable expenses of necessary medical care and treatment and funeral and burial; the pain and suffering experienced by the deceased between the time of injury and death; the value of the deceased's life apart from his earning capacity; the mitigating or aggravating circumstances attending the wrongful act, neglect or default; the loss to the beneficiaries of other expected benefits that have a monetary value; attorney fees and costs; court costs, pre- and post-judgment interest, and all other appropriate relief.

Respectfully submitted,

LAW OFFICE OF FRANCES CROCKETT

*/s/ Frances C. Carpenter*
Frances C. Carpenter
925 Luna Circle NW
Albuquerque, NM 87102
Phone: (505) 314-8883
Fax: (505) 835-5658
*Attorney for Plaintiff*

Skip to Main Content Logout My Account Search Menu New Civil Probate Family Search Refine Search Back   Location : Valencia County   Images Help

# REGISTER OF ACTIONS
## CASE NO. D-1314-CV-2016-00108

SOPHIE TAVASCI v. Bradford Cambron, et. al.

§
§
§
§
§
§

Case Type: **Miscellaneous Civil**
Date Filed: **02/17/2016**
Location: **Valencia County**
Judicial Officer: **Mercer, Cindy M.**

---

### PARTY INFORMATION

|  |  | Attorneys |
|---|---|---|
| Defendant | **AGUILAR, CHRISTOPHER** | |
| Defendant | Brown, Randal | |
| Defendant | Cambron, Bradford | |
| Defendant | Corizon Health, Inc | |
| Defendant | Dr. Sisneros | |
| Defendant | Horton, Vincent | |
| Defendant | Kamermans, Rob | |
| Defendant | Lucero, Antoinette | |
| Defendant | Mireles, M | |
| Defendant | New Mexicare, Inc  *Doing Business As*  Guadalupe County Hospital | |
| Defendant | **OVIEDO, MARIO**  Male  5' 8", 165 lbs | |
| Defendant | THE GEO GROUP, INC  *Doing Business As*  Guadalupe County Correctional Facility | |
| Plaintiff | TAVASCI, SOPHIE | Frances Crockett Carpenter  *Retained*  505-341-8884(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | | |
|---|---|---|---|
| 02/17/2016 | **Cause Of Actions**  Action Type  Remedies Sought | Miscellaneous  Action  Damages | |
| 02/17/2016 | **OPN: COMPLAINT**  *Complaint for Personal Injury and Civil Rights Violations* | | |
| 03/18/2016 | Summons  AGUILAR, CHRISTOPHER | Unserved | |
| 03/18/2016 | Summons  Brown, Randal | Served  Response Due  Returned | 05/02/2016  06/01/2016  05/13/2016 |
| 03/18/2016 | Summons  Cambron, Bradford | Unserved | |
| 03/18/2016 | Summons  Corizon Health, Inc | Served  Response Due  Returned | 04/29/2016  05/30/2016  05/13/2016 |
| 03/18/2016 | Summons | | |



EXHIBIT
B

5/19/2016

| | | | |
|---|---|---|---|
| | New Mexicare, Inc | Unserved | |
| 03/18/2016 | **Summons** | | |
| | THE GEO GROUP, INC | Served | 05/02/2016 |
| | | Response Due | 06/01/2016 |
| | | Returned | 05/13/2016 |
| 03/18/2016 | **Summons** | | |
| | Horton, Vincent | Served | 04/25/2016 |
| | | Response Due | 05/25/2016 |
| | | Returned | 05/13/2016 |
| 03/18/2016 | **Summons** | | |
| | Kamermans, Rob | Unserved | |
| 03/18/2016 | **Summons** | | |
| | Lucero, Antoinette | Served | 05/02/2016 |
| | | Response Due | 06/01/2016 |
| | | Returned | 05/13/2016 |
| 03/18/2016 | **Summons** | | |
| | Dr. Sisneros | Unserved | |
| 03/29/2016 | **JURY DEMAND 6 PERSON** | | |
| | *Jury Demand* | | |
| 03/31/2016 | **AMENDED COMPLAINT** | | |
| | *First Amended Complaint* | | |
| 04/12/2016 | **Summons** | | |
| | AGUILAR, CHRISTOPHER | Unserved | |
| | Cambron, Bradford | Unserved | |
| | Kamermans, Rob | Unserved | |
| | Brown, Randal | Unserved | |
| | New Mexicare, Inc | Served | 05/02/2016 |
| | | Response Due | 06/01/2016 |
| | | Returned | 05/13/2016 |
| | Horton, Vincent | Unserved | |
| | Dr. Sisneros | Unserved | |
| | Lucero, Antoinette | Unserved | |
| | THE GEO GROUP, INC | Served | 05/02/2016 |
| | | Response Due | 06/01/2016 |
| | | Returned | 05/13/2016 |
| | Corizon Health, Inc | Unserved | |
| | Mireles, M | Unserved | |
| | OVIEDO, MARIO | Unserved | |
| 04/28/2016 | **AMENDED COMPLAINT** | | |
| | *Second Amended Complaint for Wrongful Death and Civil Rights Violations* | | |
| 04/29/2016 | **Summons** | | |
| | Cambron, Bradford | Unserved | |
| | Kamermans, Rob | Unserved | |
| | Brown, Randal | Unserved | |
| | New Mexicare, Inc | Unserved | |
| | Horton, Vincent | Unserved | |
| | AGUILAR, CHRISTOPHER | Unserved | |
| | Dr. Sisneros | Unserved | |
| | Lucero, Antoinette | Unserved | |
| | THE GEO GROUP, INC | Unserved | |
| | Corizon Health, Inc | Unserved | |
| | Mireles, M | Unserved | |
| | OVIEDO, MARIO | Unserved | |
| 05/13/2016 | **AFFIDAVIT OF SERVICE** | | |
| | *Affidavit of Service (Antoinette Lucero)* | | |
| 05/13/2016 | **AFFIDAVIT OF SERVICE** | | |
| | *Affidavit of Service (Randal Brown)* | | |
| 05/13/2016 | **AFFIDAVIT OF SERVICE** | | |
| | *Affidavit of Service (Corizon Health Inc)* | | |
| 05/13/2016 | **AFFIDAVIT OF SERVICE** | | |
| | *Affidavit of Service (GEO Group)* | | |
| 05/13/2016 | **AFFIDAVIT OF SERVICE** | | |
| | *Affidavit of Service (Vincent Horton)* | | |
| 05/13/2016 | **AFFIDAVIT OF SERVICE** | | |
| | *Affidavit of Service (New Mexicare)* | | |

---

**FINANCIAL INFORMATION**

---

| | | | | |
|---|---|---|---|---|
| | **Plaintiff** TAVASCI, SOPHIE | | | |
| | Total Financial Assessment | | | 282.00 |
| | Total Payments and Credits | | | 282.00 |
| | **Balance Due as of 05/19/2016** | | | **0.00** |
| 02/18/2016 | Transaction Assessment | | | 132.00 |
| 02/18/2016 | File & Serve Payment | Receipt # LLUD-2016-403 | TAVASCI, SOPHIE | (132.00) |
| 03/29/2016 | Transaction Assessment | | | 150.00 |
| 03/29/2016 | File & Serve Payment | Receipt # LLUD-2016-883 | TAVASCI, SOPHIE | (150.00) |

STATE OF NEW MEXICO
COUNTY OF VALENCIA
THIRTEENTH JUDICIAL DISTRICT

SOPHIE TAVASCI, as PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH CLAIM OF DANIEL
TAVASCI, deceased,

        Plaintiff,

v.                              Case No. D-1314-CV-2016-00108

BRADFORD CAMBRON; ROB KAMERMANS;
RANDAL BROWN; NEW MEXICARE, INC. d/b/a
GUADALUPE COUNTY HOSPITAL; THE GEO
GROUP, INC. d/b/a GUADALUPE COUNTY
CORRECTIONAL FACILITY; CORIZON HEALTH,
INC.; VINCENT HORTON, Warden; CHRISTOPHER
AGUILAR, Behavioral Health Management; DR.
SISNEROS; ANTOINETTE LUCERO; M. MIRELES;
and MARIO Z. OVIEDO,

        Defendants.

## NOTICE OF FILING OF REMOVAL

      PLEASE TAKE NOTICE that Defendant Corizon Health Inc., by and through its

counsel of record, Chapman and Charlebois, P.C., (Nicole M. Charlebois and M. Clea

Gutterson), has filed a Notice of Removal in the United States District Court for the

District of New Mexico. A true and correct copy of the Notice of Removal, attached to

this Notice as Exhibit "1" was mailed to:


EXHIBIT
C

Frances C. Carpenter
Law Office of Frances Crocket
925 Luna Circle NW
Albuquerque, NM 87102
(505) 314-8883
frances@francescrockettlaw.com
*Attorneys for Plaintiff*

This 20th day of May, 2015.

Respectfully submitted,

CHAPMAN AND CHARLEBOIS, P.C.

Nicole M. Charlebois
M. Clea Gutterson
P.O. Box 92438
Albuquerque, NM 87199
Tel:  (505) 242-6000
nicole@cclawnm.com
clea@cclawnm.com
*Attorneys for Defendant Corizon Health Inc.,*

I HEREBY CERTIFY that on the 20th day of May, 2016, I filed the foregoing electronically through the Odyssey File and Serve system, which caused the following counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing, and by first class mail to the following counsel of record:

Frances C. Carpenter
Law Office of Frances Crocket
925 Luna Circle NW
Albuquerque, NM 87102
(505) 314-8883
frances@francescrockettlaw.com
*Attorneys for Plaintiff*

M. Clea Gutterson

STATE OF NEW MEXICO
COUNTY OF VALENCIA
THIRTEENTH JUDICIAL DISTRICT

SOPHIE TAVASCI, as PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH CLAIM OF DANIEL
TAVASCI, deceased,

        Plaintiff,

v.                          Case No. D-1314-CV-2016-00108

BRADFORD CAMBRON; ROB KAMERMANS;
RANDAL BROWN; NEW MEXICARE, INC. d/b/a
GUADALUPE COUNTY HOSPITAL; THE GEO
GROUP, INC. d/b/a GUADALUPE COUNTY
CORRECTIONAL FACILITY; CORIZON HEALTH,
INC.; VINCENT HORTON, Warden; CHRISTOPHER
AGUILAR, Behavioral Health Management; DR.
SISNEROS; ANTOINETTE LUCERO; M. MIRELES;
and MARIO Z. OVIEDO,

        Defendants.

## ENTRY OF APPEARANCE

    Chapman and Charlebois, P.C. (Nicole M. Charlebois and M. Clea Gutterson)

hereby enter their appearance on behalf of Defendants Corizon Health, Inc. and Dr.

Sisneros (hereinafter collectively referred to as "Corizon"). Copies of all documents

pertaining to litigation in this matter should be sent to the undersigned attorneys.

                    Respectfully Submitted,

                    CHAPMAN AND CHARLEBOIS, P.C.

                    Nicole M. Charlebois
                    M. Clea Gutterson
                    P.O. Box 92438
                    Albuquerque, NM 87199
                    Tel: (505) 242-6000
                    nicole@cclawnm.com
                    clea@cclaw.com
                    *Attorneys for Defendants*
                    *Corizon Health  Inc. and Dr. Sisneros*



EXHIBIT

D

tabbies®

I HEREBY CERTIFY that on the _20th_ day of May, I filed the foregoing electronically through Odyssey File & Serve which caused the following counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing, and by first class mail to the following counsel of record:

Frances C. Carpenter
Law Office of Frances Crocket
925 Luna Circle NW
Albuquerque, NM 87102
(505) 314-8883
*Attorneys for Plaintiff*

M. Clea Gutterson

2

JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| SOPHIE TAVASCI, as PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH CLAIM OF DANIEL TAVASCI, deceased, | BRADFORD CAMBRON; ROB KAMERMANS; RANDAL BROWN; NEW MEXICARE, INC. d/b/a GUADALUPE COUNTY HOSPITAL, et al. |

**(b)**   County of Residence of First Listed Plaintiff      Guadalupe County
          *(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant      Guadalupe County
          *(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
              THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sec. 1441
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:     ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____     DOCKET NUMBER _____

DATE   May 20 2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT  _____   APPLYING IFP  _____   JUDGE  _____   MAG. JUDGE  _____

EXHIBIT