## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SOPHIE TAVASCI, as Personal Representative of
the Wrongful Death Claim of DANIEL TAVASCI,
Deceased,

       Plaintiff,

vs.                                                                           No. CIV 16-0461 JB/LF

BRADFORD CAMBRON; ROB KAMERMANS;
RANDAL BROWN; NEW MEXICARE, Inc. d/b/a/
GUADALUPE COUNTY HOSPITAL; THE GEO
GROUP, INC. d/b/a GUADALUPE COUNTY
CORRECTIONAL FACILITY; CORIZON
HEALTH, INC.; VINCENT HORTON, Warden;
CHRISTOPHER AGUILAR, Behavioral Health
Manager; DR. SISNEROS; ANTOINETTE
LUCERO; M. MIRELES; and MARIO Z. OVIEDO,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Plaintiffs' Opposed Motion to Strike

Defendants Geo, Horton, Aguilar and Oviedo's Sixteenth Affirmative Defenses, filed June 29, 2016

(Doc. 25)("First MTS"); (ii) Plaintiff's Opposed Motion to Strike Defendants Corizon and Sisneros'

Tenth Affirmative Defense, filed June 30, 2016 (Doc. 26)("Second MTS"); and (iii) Defendant

Corizon and Dr. Sisneros' Motion to Dismiss ADA Claims for Failure to State a Claim Upon Which

Relief Can be Granted, filed July 19, 2016 (Doc. 38)("MTD").  The Court held a hearing on

September 7, 2016.  The primary issues are: (i) whether the Court should strike a paragraph from the

Defendants' Answers to Plaintiff Sophie Tavasci's Complaint under rule 12(f) of the Federal Rules

of Civil Procedure, which states that the Defendants "reserve the right to amend and assert additional

affirmative defenses as discovery progresses;" and (ii) whether the Court should dismiss a claim

asserted by S. Tavasci against a private prison contractor under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"). The Court declines to strike the paragraph reserving the right to amend the Defendants' Answers, and grants the Motion to Dismiss S. Tavasci's ADA claim.

## FACTUAL BACKGROUND

S. Tavasci is the personal representative for the wrongful death claim of Daniel Tavasci, who died of hyperkalemia at fifty-four years of age on February 20, 2014. See Second Amended Complaint for Wrongful Death and Civil Rights Violations ¶ 1, at 1, filed May 20, 2016 (Doc. 1-A)("Complaint"). D. Tavasci was incarcerated at the Guadalupe County Correctional Facility ("Correctional Facility") in Santa Rosa, New Mexico, up until his death. See Complaint ¶ 42, at 8. S. Tavasci brings nine claims against several individuals and entities involved in the operation of the Correctional Facility, as well as in the provision of medical care to Correctional Facility inmates, for their alleged negligent and discriminatory actions leading to the death of D. Tavasci. See Complaint ¶¶ 80-153, at 13-23.

At all times material to this action, The Geo Group d/b/a Guadalupe County Correctional Facility ("The Geo Group"), a foreign corporation, privately operated and managed the Correctional Facility. See Complaint ¶ 9, at 2. Corizon Health, Inc., also a foreign corporation, managed the medical facility at the Correctional Facility. See Complaint ¶10, at 3. Vincent Horton was the warden in charge of operations at the Correctional Facility. See Complaint ¶¶ 11-12, at 3. Christopher Aguilar was employed as a Behavioral Health Manager at either the Correctional Facility, The Geo Group, or Corizon Health. See Complaint ¶¶ 13-14, at 3. Dr. Sisneros was employed as a doctor at either the Correctional Facility, The Geo Group, or Corizon Health. See Complaint ¶¶ 15-16, at 3.

New Mexicare, Inc. d/b/a Guadalupe County Hospital ("New Mexicare"), a domestic non-profit corporation, operates Guadalupe County Hospital ("Guadalupe Hospital").  <u>See</u> Complaint ¶ 8, at 2.  In February 2014, Guadalupe Hospital contracted to provide healthcare to the Correctional Facility.  <u>See</u> Complaint ¶ 17, at 3.  Bradford Cambron, Rob Kamermans, and Randal Brown were employed as physicians at Guadalupe Hospital.  <u>See</u>  Complaint ¶¶ 3-7, at 2.  Antoinette Lucero worked as a nurse at Guadalupe Hospital.  <u>See</u> Complaint ¶ 19, at 3.  Mario Oviedo and M. Mireles were officers employed by either The Geo Group or the Correctional Facility.  <u>See</u> Complaint ¶¶ 20-23, at 4.

During his incarceration, D. Tavasci "suffered from a variety of medical conditions and was being treated with a variety of medications."  Complaint ¶ 27, at 4.  In September 2012, despite his known "history of misconduct for medical drug abuse," D. Tavasci was "diagnosed with major depressive disorder and treated with Prozac."  Complaint ¶ 28, at 4.  D. Tavasci was also prescribed, and was permitted to keep in his cell, "a large number of medications" which could be used "to commit suicide or cause himself serious bodily harm."  Complaint ¶¶ 37-39, at 7-8.  These medications included: (i) Potassium; (ii) Metformin; (iii) Zantac; (iv) Losartan; (v) Nitrogycerin; (vi) Neurontin; (vii) Clonidine; (viii) Docusate; (ix) Forosemide; (x) Furosemide; (xi) Glipizide; (xii) Ibuprofen; (xiii) Liprinosil; (xiv) an albuterol inhaler; (xv) Fiber Lax; (xvi) Lactulose; (xvii) Allopurinol; (xviii) Amlodipine; (xix) Ecotrin; (xx) Tenormin; (xxi) calcium; (xxii) Zantac; (xxiii) Zocor; and (xxiv) nasal spray.  <u>See</u> Complaint ¶ 28, at 5-6.

On February 19, 2014, during a routine clinic visit, D. Tavasci was accused of "assaulting Dr. Sisneros by rising from his chair and '[swinging] his right hand . . . while holding a reading book.'"  Complaint ¶ 33, at 7 (alterations in original).  D. Tavasci was subsequently evaluated by Correctional Facility behavioral staff member J. Yearley, who determined that D. Tavasci was

"agitated and depressed."  Complaint ¶ 34, at 7.  Dr. Sisneros signed off on the evaluation, and D. Tavasci was relocated from his cell in general population to a cell in segregation.  See Complaint ¶ 35, at 7.  Because D. Tavasci had been in the hospital, a "Segregation Inmate Mental Health Examination" was not completed prior to his transfer, which is "contrary to policy."  Complaint ¶ 36, at 7.  Dr. Sisneros, however, was aware of D. Tavasci's "history of and treatment for major depression and medication drug abuse at the time Tavasci was placed into segregation."  Complaint ¶ 37, at 7.  Dr. Sisneros also knew that D. Tavasci kept in his cell numerous medications, mentioned above, which could be abused to inflict self-harm.  See Complaint ¶¶ 38-39, at 8.  Despite Dr. Sisneros' knowledge of all this, D. Tavasci was permitted to keep his medications on his person while in segregation.  See Complaint ¶ 40, at 8.

Early in the morning of February 20, 2014, after being placed in segregation, D. Tavasci "took a large number of medications that had been prescribed to him . . . ."  Complaint ¶ 41, at 8. During an inmate count at around 5:00 a.m., officers discovered D. Tavasci's "motionless" body lying "face-down on his bunk."  Complaint ¶ 42, at 8.  The officers promptly called for medical assistance, moved D. Tavasci to the infirmary unit, and arranged for medical transport to Guadalupe Hospital.  See Complaint ¶¶ 43-45, at 8.  A subsequent inspection of D. Tavasci's cell revealed that nearly all of the "blister packs" of medications kept therein were empty.  Complaint ¶¶ 46-48, at 9. Although the prison and infirmary staff knew of D. Tavasci's medical condition and of the medications stored in his cell, however, they did not inform the emergency responders of a possible medication overdose.  See Complaint ¶¶ 49-50, at 9.

D. Tavasci was rushed by ambulance to Guadalupe Hospital at 5:32 a.m.  See Complaint ¶ 45, at 8.  At 6:30 a.m., Nurse Lucero requested D. Tavasci's medical history from Correctional Facility, and at 6:43 a.m., Dr. Cambron assumed care of D. Tavasci.  See Complaint ¶¶ 53-54, at 9.

By 7:00 a.m., D. Tavasci had "regained consciousness and was combative" with Guadalupe Hospital and Correctional Facility personnel.  Complaint ¶ 55, at 9.  Around 7:13 a.m., Correctional Facility or Corizon Health employees faxed D. Tavasci's medical records, including a list of prescriptions, to Guadalupe Hospital.  See Complaint ¶ 56, at 10.  D. Tavasci's doctors promptly ordered laboratory tests.  See Complaint ¶ 56, at 10.  Blood tests were performed at 7:13 a.m., and at 7:20 a.m., D. Tavasci was administered an EKG.  See Complaint ¶¶ 57-58, at 10.  D. Tavasci was also given saline, glucagon, sodium chloride, and a catheter.  See Complaint ¶ 62, at 10.

D. Tavasci's EKG returned "abnormal results."  Complaint ¶ 58, at 10.  His lab work was likewise atypical, revealing high potassium, sodium, BUN, and creatinine levels, as well as a wide anion gap and elevated white blood cell count.  See Complaint ¶¶ 58-60, at 10.  Given these results, notes in D. Tavasci's medical records indicate that Guadalupe Hospital "staff suspected or were aware of a possible overdose on medications . . . ."  Complaint ¶ 61, at 10.  It was also apparent from D. Tavasci's lab work that "he was exhibiting signs of hyperkalemia (high potassium levels)."  Complaint ¶ 63, at 10.  Nevertheless, D. Tavasci's doctors "did not change his treatment after receipt of the Correctional Facility medical records, or after receipt of the lab test results showing high potassium, but continued to administer sodium chloride by IV, give saline and dextrose injection, and monitor his blood sugar closely."  Complaint ¶ 64, at 11.

At 8:47 a.m., corrections officers informed Guadalupe Hospital staff that D. Tavasci "had admitted to taking a lot of pills."  Complaint ¶ 65, at 11.  Around the same time, Officers Oviedo and Tavasci began making arrangements to transport D. Tavasci from Guadalupe Hospital to a prison in Los Lunas.  See Complaint ¶ 66, at 11.  As they assembled D. Tavasci's property from his cell, they "discovered a roll of toilet paper that allegedly had what appeared to be a written schedule of the officers' times for Unit checks as they were being performed."  Complaint ¶ 67, at 11.  They also

discovered a deodorant cap containing a small pill and some powder residue.  <u>See</u> Complaint ¶ 67, at

11.  At Oviedo's instruction, Mireles discarded these items by flushing them down the toilet.  <u>See</u>

Complaint ¶ 68, at 11.

At 11:45 a.m., Guadalupe Hospital staff was notified that D. Tavasci was being relocated

from Correctional Facility to a new prison facility.  <u>See</u> Complaint ¶ 69, at 11.  Shortly thereafter, at

around 12:03 p.m., Nurse Lucero observed that D. Tavasci was "irritable."  Complaint ¶ 69, at 11.

Upon discovering that D. Tavasci's blood pressure was rather low, Nurse Lucero placed him in the

"Trendelenburg" position and under the care of Dr. Kamermans.  Complaint ¶¶ 70-71, at 11-12.

Within two minutes, at 12:15 p.m., D. Tavasci's "breathing became agonal and he lost consciousness

. . . ."  Complaint ¶ 72, at 12.  Guadalupe Hospital staff promptly "intubated Tavasci, administered

epinephrine, and performed CPR."  Complaint ¶ 73, at 12.  These efforts were unsuccessful,

however, and at 12:43 p.m., D. Tavasci was declared dead.  <u>See</u> Complaint ¶ 74, at 12.  An autopsy

later confirmed that D. Tavasci died from hyperkalemia, and that he "had twenty-one potassium pills

in his stomach and two potassium pills in his esophagus, for a total of twenty-three undissolved

potassium pills."  Complaint ¶ 75, at 12.

## PROCEDURAL BACKGROUND

S. Tavasci initiated this action in the Thirteenth Judicial District Court in Valencia County,

New Mexico, on April 28, 2016.  <u>See</u> Complaint at 1.  S. Tavasci seeks damages for D. Tavasci's

death and for the "physical and mental injuries he sustained prior to his death as the result of the

medical negligence and inadequate medical treatment he received from named Defendants."

Complaint ¶ 78, at 12.  Counts I-V of the Complaint allege negligence on the part Dr. Kamermans,

Dr. Cambron, Dr. Brown, Nurse Lucero, and Guadalupe Hospital.  <u>See</u> Complaint ¶¶ 80-115, at 13-

18.  Count VI alleges a claim pursuant to 42 U.S.C. § 1983 for failure to provide medical care and

treatment in violation of the Eighth Amendment to the Constitution of the United States of America against the Correctional Facility, The Geo Group, Corizon Health, Warden Horton, Aguilar, and Dr. Sisneros.  See Complaint ¶¶ 116-127, at 18-19.  Count VII alleges a state law claim for negligent care and treatment against the same Defendants.  See Complaint ¶¶ 128-135, at 19-20.  Count VIII alleges a spoliation of evidence claim against Officers Oviedo and Mireles.  See Complaint ¶¶ 136-142, at 20-21.  Finally, Count IX alleges that The Geo Group, the Correctional Facility, and Corizon Health discriminated against D. Tavasci in violation of Title II of the ADA.  See Complaint ¶¶ 143-153, at 21-23.

On May 20, 2016, Corizon Health and Dr. Sisneros removed the case pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.  See Notice of Removal at 1, filed May 20, 2016 (Doc. 1).  Corizon Health and Dr. Sisneros subsequently filed an answer to S. Tavasci's Complaint on June 3, 2016.  See Defendant Corizon Health Inc.'s Answer to Plaintiff's Second Amended Complaint for Wrongful death and Civil Rights Violations at 1, filed June 3, 2016 (Doc. 9)("Corizon Answer").  The Corizon Answer asserts ten affirmative defenses.  See Corizon Answer ¶¶ 1-10, at 29-30.

On May 23, 2016, The Geo Group and Warden Horton filed an answer to S. Tavasci's Complaint.  See Defendants The Geo Group, Inc. and Warden Horton's Answer to Plaintiff's Second Amended Complaint for Wrongful Death and Civil Rights Violations at 1, filed May 21, 2016 (Doc. 5)("Geo Answer").  Oviedo and Aguilar filed an answer on June 9, 2016.  See Defendants Mario Oviedo and Christopher Aguilar's Answer to Plaintiff's Second Amended Complaint for Wrongful Death and Civil Rights Violations at 1, filed June 9, 2016 (Doc. 17)("Oviedo Answer").  On June 13, 2016, The Geo Group and Warden Horton filed an amended answer.  See Defendants The Geo Group, Inc. and Warden Horton's Amended Answer to Plaintiff's Second Amended Complaint for Wrongful Death and Civil Rights Violations at 1, filed June 13, 2016 (Doc. 20)("Amended Geo

Answer"). Each of these answers asserts sixteen identical affirmative defenses. See Geo Answer ¶¶ 1-16, at 20-22; Oviedo Answer ¶¶ 1-16, at 20-22; Amended Geo Answer ¶¶ 1-16, at 20-22.

Three motions are presently before the Court. In the First MTS, S. Tavasci moves to strike the Oviedo Answer's and the Amended Geo Answer's Sixteenth Affirmative Defenses.[1] See First MTS at 1. In the Second MTS, S. Tavasci moves to strike the Amended Geo Answer's Tenth Affirmative Defense. See Second MTS at 1. As grounds for both motions, S. Tavasci asserts that the subject affirmative defenses are "not in accordance with the New Mexico Rules of Civil Procedure." First MTS at 1; Second MTS at 1. With respect to the third motion before the Court, the MTD, Corizon Health and Dr. Sisneros move to dismiss Count IX of the Complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a cognizable claim under the ADA. See MTD at 1. The Court will discuss these motions and their responsive pleadings in turn.

1.    **The First Motion to Strike.**

S. Tavasci moves to strike the Oviedo Answer's and the Amended Geo Answer's Sixteenth Affirmative Defenses "on the grounds that [they are] not in accordance with the New Mexico Rules of Civil Procedure." First MTS at 1. The Sixteenth Affirmative Defense in both answers states: "These affirmative defenses are preliminary, without the benefit of all the facts underlying or pertaining to Plaintiff's claims. These Defendants reserve the right to amend and assert additional affirmative defenses as discovery progresses." Oviedo Answer ¶¶ 16, at 22; Amended Geo Answer ¶¶ 16, at 20. S. Tavasci contends that, under rule 1-008(C) of the New Mexico Rules of Civil Procedure, a defendant must "articulate with particularity affirmative defenses." First MTS at 1.

---

[1]S. Tavasci's First MTS refers to the Geo Answer and Oviedo Answer. See First MTS at 1. In the Amended Geo Answer, however, The Geo Group and Warden Horton also assert the subject Sixteenth Affirmative Defense. See Amended Geo Answer ¶ 16, at 22. Accordingly, the First MTS should be directed to the Amended Geo Answer rather than the Geo Answer. S. Tavasci agrees that the First MTS is directed towards the Oviedo Answer and Amended Geo Answer, rather than the Geo Answer and Oviedo Answer. See Reply in Support of Plaintiff's Motion to Strike Defendants' Sixteenth Affirmative Defense at 1, filed July 18, 2016 (Doc. 35)("First MTS Reply").

Here, she argues, the subject affirmative defense "fail[s] to give proper notice of such other affirmative defenses thereby prejudicing Plaintiff." First MTS at 2. In her view, the proper method for "rais[ing] additional affirmative defenses . . . is to amend the answer under Rule 1-015 . . . ." First MTS at 2. Accordingly, S. Tavasci asks the Court to strike the Sixteenth Affirmative Defense. See First MTS at 2.

On July 12, 2016, The Geo Group, Warden Horton, Aguilar, and Oviedo (the "Correctional Facility Defendants") responded, contending that the "paragraphs Plaintiffs seek to have stricken from the pleadings are not affirmative defenses." Defendants the Geo Group, Inc., Horton, Aguilar and Oviedo's Response in Opposition to Plaintiffs' Motion to Strike Affirmative Defense [doc. 25] ¶ 3, at 2, filed July 12, 2016 (Doc. 30)("First MTS Response"). Instead, the Correctional Facility Defendants assert, the paragraphs "merely reiterate that Defendants have reserved the right to amend their Answers at a later date, if discovery reveals additional defenses are available to them." First MTS Response ¶ 3, at 2. The Correctional Facility Defendants explain that they "specifically informed Plaintiffs that if additional affirmative defenses become available, they may seek to amend the Answer in accordance with the Rules of Civil Procedure and the Court's scheduling order." First MTS Response at ¶ 4, at 2. They avow that they "have no intention of subverting the Rules," so the Court should deny the First MTS. First MTS Response at ¶ 4, at 2.

S. Tavasci replied on July 18, 2016, first describing the standard the Court should apply to motions to strike under rule 12(f). See First MTS Reply at 1-3. She argues that it is unfair to "'require a plaintiff to provide a defendant with enough notice that there is a plausible, factual basis'" for her claims, yet to "'permit the defendant under another pleading standard simply to suggest that some defense may possibly apply in the case.'" First MTS Reply at 2-3 (quoting Castillo v. Roche Labs., Inc., 2010 U.S. Dist. LEXIS 87681, at *2 (S.D. Fla. 2010)(Seitz, J.)). She

concedes, however, that some courts "have held that the heightened pleading standard of *Twombly* and *Iqbal* does not apply to affirmative defenses."  First MTS Reply at 3 (citations omitted).  She also addresses the Correctional Facility Defendants' contention that the statement in paragraph sixteen is not an affirmative defense.  See First MTS Reply at 4.  She notes that the Correctional Facility Defendants "have labeled it as an affirmative defense under the heading 'affirmative defense . . . .'"  First MTS Reply at 4.  In any event, she argues, if "at some later date defendants seek to add affirmative defenses, they must comply with Rule 15 of the Federal Rules of Civil Procedure."  First MTS Reply at 4.  S. Tavasci concludes that the Correctional Facility Defendants "cannot reserve unstated affirmative defenses because such reservations fail to give Plaintiffs fair notice."  First MTS Reply at 4.

###   2.   **The Second Motion to Strike.**

In the Second MTS, S. Tavasci moves to strike the Corizon Answer's Tenth Affirmative Defense "on the grounds that it is not in accordance with the New Mexico Rules of Civil Procedure."  Second MTS at 1.  She notes that, as with the Oviedo Answer's and the Amended Geo Answer's Sixteenth Affirmative Defenses, the Corizon Answer's Tenth Affirmative Defense states that "[t]hese affirmative defenses are preliminary, without the benefit of all the facts underlying or pertaining to Plaintiff's claims, and therefore Defendant reserves the right to amend and assert additional affirmative defenses as discovery progress."  Second MTS at 1.  S. Tavasci contends that this language makes rule 1-008(C) obsolete, because it defeats the purpose of requiring that defendants "articulate with particularity affirmative defenses."  Second MTS at 1.  Furthermore, S. Tavasci submits that such use of rule 1-008(C) subverts the amendment process in rule 1-015.  See Second MTS at 2.  She argues that "the proper method is to amend the answer under Rule 1-015 as would be the same for a plaintiff to assert new claims."  Second MTS at 2.  S. Tavasci therefore asks the Court to strike the Tenth Affirmative Defense.  See Second MTS at 2.

Corizon Health and Dr. Sisneros responded on July 14, 2016.  See Corizon Health, Inc. and Dr. Sisneros' Response in Opposition to Plaintiffs' Opposed Motion to Strike Tenth Affirmative Defense at 1, filed July 14, 2016 (Doc. 33)("Second MTS Response").  Corizon Health and Dr. Sisneros largely reiterate the contentions set forth in the First MTS Response.  See Second MTS Response at 1-2.  They argue that the "paragraphs Plaintiffs seek to have stricken from the pleadings are not affirmative defenses," but merely "reiterate that Defendants have reserved the right to amend."  Second MTS Response at 2.  They remind the Court that they "have no intention of subverting the Rules."  Second MTS Response at 2.

S. Tavasci replied on July 18, 2016.  See Reply in Support of Plaintiff's Motion to Strike Defendant Corizon's Tenth Affirmative Defense at 1, filed July 18, 2016 (Doc. 34)("Second MTS Reply").  S. Tavasci continues to object that Corizon Health and Dr. Sisneros did not comply with rule 15, which proscribes "reserv[ing] unstated affirmative defenses because such reservations fail to give Plaintiffs fair notice."  Second MTS Reply at 4.  S. Tavasci requests that Corizon Health and Dr. Sisneros "follow the clear procedural rules [in rule 15] that describe what steps, if any, need to be taken before amending a pleading" to place both parties on a similar footing.  Second MTS Response at 5.  Otherwise, she argues, Corizon Health and Dr. Sisneros act contrary to the rules by "depriv[ing] Plaintiff of fair notice of defenses" and "creat[ing] uncertainty about the effectiveness of Defendants' reservation and whether they will be required to comply with . . . . Rule 15."  Second MTS Reply 5.  Consequently, S. Tavasci urges the Court to strike Corizon Health and Dr. Sisneros' Tenth Affirmative Defense.  See Second MTS Reply at 6.

On July 22, 2016, Corizon Health and Dr. Sisneros supplemented their Second MTS Response with additional citations and pertinent authorities.  See Notice of Supplemental Authorities at 1, filed July 22, 2016 (Doc. 39)("Supplemental Authorities").  They initially note that they

inadvertently filed their original response without citing certain pertinent authorities. <u>See</u> Supplemental Authorities at 1. They cite rule 8(c) of the Federal Rules of Civil Procedure as well as three cases: (i) <u>Jicarilla Apache Tribe v. Andrus</u>, 687 F. 2d 1324 (10th Cir. 1982); (ii) <u>Vary v. City of Cleveland</u>, 2016 U.S. Dist. LEXIS 72054 (N.D. Ohio 2016); and (iii) <u>Tiscareno v. Frasier</u>, 2012 U.S. Dist. LEXIS 55553 (D. Utah 2012). <u>See</u> Supplemental Authorities at 1-2. They argue that all three cited cases demonstrate that they reserve the right to raise any necessary defenses and deserve "a lighter pleading standard." Supplemental Authority at 2.

S. Tavasaci responded to Corizon Health and Dr. Sisneros' Supplemental Authorities on July 26, 2016. <u>See</u> Plaintiff's Response to Defendant's Notice of Supplemental Authority [Doc. 39] at 1, filed by July 26, 2016 (Doc. 40)("Supplemental Authority Response"). Citing <u>Niemi v. Lasshofer</u>, 728 F.3d 1252 (10th Cir. 2013), S. Tavasaci argues that "[t]he proper function of a supplemental authority notice is to advise the Court of 'new authorities' (i.e. case law, statutes or rules)," and that it "is not a procedure for supplementing the record." Supplemental Authority Response at 1. She notes that the briefing on this matter closed on July 19, 2016. <u>See</u> Supplemental Authority Response at 1. Consequently, she argues, supplementing the record with additional evidence on this matter, even if Corizon Health and Dr. Sisneros "'inadvertently filed their Response without citation to pertinent and significant authorities,'" is improper. Supplemental Authority Response at 2 (quoting Supplemental Authorities at 1). In addition to her procedural complaints, S. Tavasci objects to two of the cases relied on by Corizon Health and Dr. Sisneros: <u>Vary v. City of Cleveland</u> and <u>Tiscareno v. Fraiser</u>. <u>See</u> Supplemental Authority Response at 2. She argues that these cases did not originate from the United States Court of Appeals for the Tenth Circuit or from the District of New Mexico, and therefore, they carry no legally binding effect. <u>See</u> Supplemental Authority Response at 2. S.

Tavasci thus asks the Court to strike or deny Corizon Health and Dr. Sisneros' Supplemental Authority. See Supplemental Authority Response at 2.

  **3.**  **The Motion to Dismiss.**

  On July 19, 2016, Corizon Health and Dr. Sisneros filed the MTD asking the Court to "dismiss Count Nine of Plaintiffs' Second Amended Complaint as against these Defendants" under rule 12(b)(6). MTD at 1. They argue that "Count Nine asserts discrimination" claims under the ADA, but that "the ADA does not apply to private corporations that operate prisons or to their contractors." MTD at 1. Corizon Health and Dr. Sisneros explain that "Corizon is a private corporation which managed the medical facility at the [Correctional Facility]," while "Dr. Sisneros worked as a physician for Corizon at the [Correctional Facility]." MTD at 2. They contend that "a private prison contractor is not a 'public entity' under the ADA and therefore, is not subject to its provisions." MTD at 3. Moreover, they argue, "the 'overwhelming majority' of courts, including the Tenth Circuit, reject such claims against private entities." MTD at 3. See MTD at 4 (citing Phillips v. Tiona, 508 F. App'x 737, 748 (10th Cir. 2013)(holding that private prison management companies are not subject to the ADA's Title II because they are not "instrumentalit[ies]" of government)). They assert that, accordingly, the Court should dismiss the ADA claim against Corizon Health and Dr. Sisneros. See MTD at 5.

  S. Tavasci responded on August 11, 2016. See Plaintiff's Response to Defendant Corizon's and Dr. Sisneros' (Hereinafter 'Defendants') Motion to Dismiss ADA Claims for Failure to State a Claim Upon Which Relief Can be Granted [Doc. 38] at 1, filed August 11, 2016 (Doc. 42)("MTD Response"). S. Tavasci makes two main arguments. First, she argues that Corizon Health and Dr. Sisneros "failed to follow the local rules which mandate that they are to seek concurrence from opposing counsel and that failure to do so will result in a denial of their motion." MTD Response at 1. Second, she argues that Corizon Health is liable under the ADA. See MTD Response at 3. She

begins by noting that "[s]tate prisons fall squarely within the statutory definition of 'public entity' under Title II of the ADA, 42 U.S.C § 12132." MTD Response at 3. She argues that Corizon Health operates "under the inherent authority of the State of New Mexico Department of Corrections" and therefore acts "under color of law." MTD Response at 4. S. Tavasci notes that the Tenth Circuit has delineated four tests "to determine whether private parties should be deemed state actors when conducting a state action analysis: (1) the public function test, (2) the nexus test, (3) the symbiotic relationship test and (4) the joint action test." MTD Response at 4. She argues that, under any of these tests, Corizon Health should be deemed a state actor. See MTD Response at 5-7. S. Tavasci adds that, under New Mexico law, Corizon should be held liable for the alleged ADA violations. See MTD Response at 7-9. Finally, S. Tavasci contends that the contract between the New Mexico Department of Corrections and Corizon Health "mandates that Corizon is liable for the ADA violations as stated in Plaintiff's Complaint." MTD Response at 8.

Corizon Health and Dr. Sisneros replied on August 25, 2016. See Defendants Corizon and Dr. Sisneros' Reply in Support of Motion to Dismiss ADA Claims at 1, filed August 25, 2016 (Doc. 45)("Second MTS Reply"). They reiterate that most courts, including the Tenth Circuit, hold that "a private contractor such as Corizon[] is not a public entity and is not subject to Title II of the ADA." Second MTS Reply at 1 (citation omitted). Corizon Health and Dr. Sisneros criticize S. Tavasci's MTD Response for failing to cite any contrary authority. See Second MTS Reply at 1-2. They argue that the cases cited by S. Tavasci discuss irrelevant law applicable to 42 U.S.C. § 1983 claims, but not applicable to ADA claims. See Second MTS Reply at 2. Corizon Health and Dr. Sisneros cite Edison v. Douberly, 604 F.3d 1307 (11th Cir. 2010), where the United States Court of Appeals for the Eleventh Circuit rejected the argument that a private prison management corporation is a "public entity" under the ADA. Second MTS Reply at 4. They explain that "district courts arrive at

the same conclusion, including many cases where the defendant is a private entity that contracts to provide services to a prison."  Second MTS Reply at 5 (citing <u>Medina v. Valdez</u>, 2011 U.S. Dist. LEXIS 25674, at *3 (D. Idaho 2011)).  The Defendants assert that the Court "should follow the 'vast majority' of courts including the Tenth Circuit, and hold that a private contractor is not a 'public entity' under the ADA."  Second MTS Reply at 7.

### 4.    The First MTS Withdrawal.

On September 7, 2016, the Correctional Facility Defendants withdrew their opposition to the First MTS.  <u>See</u> Defendants The Geo Group, Inc., Horton, Aguilar and Oviedo's Notice of Withdrawal of Opposition to Plaintiff's Motion to Strike Affirmative Defense [doc. 25] at 1, filed September 7, 2016 (Doc. 48)("Notice of Withdrawal").  The Correctional Facility Defendants contend that the Court's decision in <u>Lane v. Page</u>, 272 F.R.D. 581 (D.N.M. 2011)(Browning, J.), compels the withdrawal of their opposition.  <u>See</u> Notice of Withdrawal ¶¶ 2-3, at 1-2.

### 5.    The Hearing.

The Court held a hearing on the three motions on September 7, 2016.  <u>See</u> Transcript of Motion Hearing held on 09/07/16 at 1:22 ("Tr.").[2]  Turning first to the Motions to Strike, the Court informed the parties that, in <u>Lane v. Page</u>, it had concluded that the heightened pleadings standards that the Supreme Court of the United States of America established in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)("<u>Twombly</u>"), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)("<u>Iqbal</u>"), do not apply to affirmative defenses.  <u>See</u> Tr. at 3:16-18 (Court).  The Court explained that, in its view, functional demands "militate against requiring factual specificity [for] affirmative defenses."  Tr. at 3:25-4:2 (Court).  Moreover, the Court expressed that "there is very little risk of prejudice to the plaintiff with these affirmative defenses," although the Court agreed with S. Tavasci that "[t]hey probably

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

shouldn't have been labeled affirmative defenses."  Tr. at 4:5-8 (Court).  The Court added that motions to strike "tend to be busywork, and crowd the docket."  Tr. at 4:15-25 (Court).

S. Tavasci began her argument by noting that the Correctional Facility Defendants had just withdrawn their opposition to the First MTS, but that Corizon Health and Dr. Sisneros maintained their opposition to the Second MTS.  See Tr. at 5:5-16 (Carpenter).  S. Tavasci explained that the crux of her argument is that the subject affirmative defenses' language is rather broad, and that it therefore does not afford a "fair opportunity to address what they may mean."  Tr. at 5:15-19 (Carpenter).  S. Tavasci argued, however, that if the Court requires Corizon Health and Dr. Sisneros to file an amendment under rule 15 to add an affirmative defense in the future, such a requirement would "cure the issue."  Tr. at 6:12-17 (Carpenter).

Following S. Tavasci's argument, the Correctional Facility Defendants briefly explained why they withdrew their opposition to the First MTS.  See Tr. at 7:4-13 (White).  They explained that, according to their reading of the Court's decision in Lane v. Page, the Court disfavored catch-all affirmative defenses such as the Sixteenth Affirmative Defense in the Oviedo Answer and the Amended Geo Answer, because such defenses "clutter up the pleadings."  Tr. at 7:4-13 (White).

Turning to the Second MTS, Corizon Health and Dr. Sisneros argued that "rule 8(c) requires a party to affirmatively state any avoidance or affirmative defense."  Tr. at 8:3-8 (Gutterson).  Accordingly, they reasoned, "it makes sense to add such a catch all to protect in the event something additional comes up in the future."  Tr. at 8:8-11 (Gutterson).  Nevertheless, they conceded that they would have to comply with rule 15 if they wanted to add an affirmative defense in the future.  See Tr. at 10:4-7 (Gutterson).

In response to Corizon Health and Dr. Sisneros, S. Tavasci argued that there is no need for a catch-all affirmative defense, because "[t]hat's what Rule 15 is for."  Tr. at 9:1-3 (Carpenter).  S.

Tavasci reasoned that, pursuant to rule 15, a plaintiff can amend their complaint and a defendant can amend their answer, and that application of rule 15 here would put the parties on the "same footing." Tr. at 9:11-15 (Carpenter).  S. Tavasci noted that plaintiffs are not permitted to put in their complaint a similar catch-all that "reserves the right down the road to amend the complaint . . . if discovery reveals something new."  Tr. at 9:15-19 (Carpenter).  Nevertheless, S. Tavasci conceded that a requirement that both parties comply with the same motion practice pursuant to rule 15 would resolve the issue.  See Tr. at 10:8-13 (Carpenter).

Having heard arguments from both sides, the Court indicated that it would grant the First MTS because of the Correctional Facility Defendants' withdrawal of opposition, but that it would deny the Second MTS.  See Tr. at 10:14-19 (Court).  The Court first distinguished the facts of this case from those in Lane v. Page.  See Tr. at 10:19-20 (Court).  In Lane v. Page, the Court explained, the Court struck the defendants' reservation of the right to assert additional affirmative defenses because the defendants' answer as a whole had so many issues that it needed to be amended, and hence, the affirmative defenses "might as well [be] clean[ed] up [too]."  Tr. at 10: 21-11:1 (Court). Here, the Court explained, the Oviedo Answer's and the Amended Geo Answer's only alleged defects are their "reservation of the ability to come back and seek leave to add affirmative defenses." Tr. at 11:2-6 (Court).  The Court reasoned that these reservations are "not totally without merit," and that, notwithstanding their catch-all language, Corizon Health and Dr. Sisneros remain subject to the requirements of rule 15 should they assert additional affirmative defenses in the future.  Tr. at 11:1-13 (Court).  The Court noted, however, that "these shouldn't be labeled as affirmative defenses."  Tr. at 11:6-10 (Court).

Turning to the Motion to Dismiss, the Court noted that it has previously concluded that the ADA's Title II "does not provide for individual capacity suits against state officials, and if it doesn't

apply to state officials, I don't think it would apply to the entities we're talking about here." Tr. at 11:16-25 (Court). With respect to Dr. Sisneros, the Court noted that the Tenth Circuit has held that the "ADA precludes personal capacity suits against individual[s] who do not otherwise qualify as employers [under] the statutory definition." Tr. at 12: 11-17 (Court). As for Corizon Health, the Court stated that "Tenth Circuit law is pretty squarely against these type[s] of claims." Tr. at 12:18-23 (Court). The Court explained that the issue is not whether Corizon Health is a state actor for purposes of § 1983, but whether the ADA allows suits pursuant to Title II against non-state entities, "and I don't think [it does]." Tr. at 12:23-13:3 (Court). Accordingly, the Court stated that "the ADA claims should be dismissed" against Corizon Health and Dr. Sisneros. Tr. at 13:3-6 (Court).

S. Tavasci opened by indicating her agreement with the Court's reasoning with respect to Dr. Sisneros. See Tr. at 14:4-7 (Carpenter). She accordingly withdrew her ADA claim against Dr. Sisneros. See Tr. at 14:6-7 (Carpenter). With respect to Corizon Health, however, S. Tavasci objected to the Court's ruling, arguing that controlling case law turns on whether an actor is "an instrumentality of the state." Tr. at 14:8-10 (Carpenter). She contended that the ADA's Title II uses the word "agency" and that Corizon Health is contractually an "agent of the New Mexico Department of [S]tate." Tr. at 14:13-16 (Carpenter). Consequently, she argued, since the New Mexico Department of Corrections is a governmental entity, and Corizon Health is its agent, Corizon Health constitutes a public entity that is subject to the ADA. See Tr. at 16:1-5 (Carpenter).

In response, Corizon Health and Dr. Sisneros argued that a "public entity" under the ADA is a "state or local Government, department, agency, special purpose district or other instrumentality of the state." Tr. at 24:3-6 (Gutterson). Corizon Health, they argued, is not an agency of New Mexico, and S. Tavasci's "argument that somehow the contract with the Government will transform this private corporation into a public entity has failed under [Title II] repeatedly." Tr. at 24:6-10

(Gutterson). They contended that courts have "universally" ruled "that a private corporation that contracts with the state to provide services to prisoners is not subject to ADA [Title II] liability." Tr. at 24:11-15 (Gutterson). In their view, "the use of the term agency . . . is inappropriate." Tr. at 24:21-22 (Gutterson). They explained that the issue is not, as S. Tavasci insists, whether Corizon Health is an "agent of the state," but whether it is a "state agency" subject to the ADA. Tr. at 24:22-25 (Gutterson). Corizon Health and Dr. Sisneros concluded that, because Corizon Health is a private corporation and not an "instrumentality" of the state, it is not subject to the ADA's Title II. Tr. at 27:1-4 (Gutterson).

Having heard arguments from both sides, the Court maintained that it was still "inclined to grant the motion [to dismiss]." Tr. at 27:11 (Gutterson).

### LAW REGARDING MOTIONS TO STRIKE UNDER RULE 12(f)

Rule 12(f) of the Federal Rules of Civil Procedures provides:

> **(f)** **Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> **(1)** on its own; or
>
> **(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). Professors Charles Wright and Arthur Miller have recognized, however, that such motions are not favored and, generally, should be denied:

> The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter. However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and

> may cause some form of significant prejudice to one or more of the parties to the
> action.  Any doubt about whether the challenged material is redundant, immaterial,
> impertinent, or scandalous should be resolved in favor of the non-moving party.

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d. ed.

2015)(footnotes omitted).  Accord Burget v. Capital W. Sec., Inc., 2009 U.S. Dist. LEXIS 114304, at

*1 (W.D. Okla. 2009)(Miles-LaGrange, J.)(citing Scherer v. U.S. Dep't of Educ., 78 F. App'x 687,

689 (10th Cir. 2003)(unpublished[3])("While motions to strike are generally disfavored, the decision to

grant a motion to strike is within the discretion of the court.")).

 "Allegations will not be stricken as immaterial under this rule unless they have no possible

bearing on the controversy."  Estate of Gonzales v. AAA Life Ins. Co., 2012 U.S. Dist. LEXIS

67258, at *5 (D.N.M. 2012)(Browning, J.)(quoting Sai Broken Arrow C, LLC v. Guardian

Emergency Vehicles, Inc., 2010 U.S. Dist. LEXIS 1593, at *5 (N.D. Okla. 2010)(Eagan, J.)).  "The

Court must be convinced that there are no questions of fact, that any questions of law are clear and

not in dispute, and that under no set of circumstances could the defenses succeed."  Friends of Santa

Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. 1333, 1343 (D.N.M. 1995)(Hansen, J.)(quoting Carter-

Wallace, Inc. v. Riverton Lab., Inc., 47 F.R.D. 366, 368 (S.D.N.Y. 1969)(Cannella, J.))(internal

---

 [3]Scherer v. U.S. Department of Education is an unpublished opinion, but the Court can rely
on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See
10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for
their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not
binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . .  However, if an
unpublished opinion . . . has persuasive value with respect to a material issue in a case and would
assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426
F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Scherer v. U.S. Department of
Education; Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992 WL 43490 (10th Cir. 1998); In re
Hopkins, 162 F.3d 1173, 1998 WL 704710 (10th Cir. 1998); Okla. Farm Bureau Mut. Ins. Co. v.
JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005); Browning v. Am. Family Mut. Ins. Co., 196 F.
App'x 496 (10th Cir. 2010); Jenkins v. MTGLQ Investors, 218 F. App'x 719 (10th Cir. 2007);
Watkins v. Terminix Int'l Co., Nos. CIV 96-3053, 96-3078, 1997 WL 34676226 (10th Cir. May 22,
1997); and Sheldon v. Khanal, No. 10-3237, 2012 WL 5860560 (10th Cir. Nov. 20, 2012), have
persuasive value with respect to a material issue, and will assist the Court in its disposition of this
Memorandum Opinion and Amended Order.

quotation marks omitted).  Professors Wright and Miller have also commented on what constitutes "immaterial" matter in the context of a motion to strike.  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." 5C Wright & Miller, supra, § 1382 (footnotes omitted).  Scandalous allegations are those that degrade a party's moral character, contain repulsive language, or detract from the court's dignity. See Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc., 173 F.R.D. 275, 285 (D. Colo. 1997)(Nottingham, J.).

"Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike."  Dubrovin v. Ball Corp. Consol. Welfare Ben. Plan for Emps., 2009 U.S. Dist. LEXIS 123844, at *1 (D. Colo. 2009)(Daniel, J.).  Accord Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009)(Browning, J.)("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to strike.")(citing Searcy v. Soc. Sec. Admin., 1992 WL 43490, at *1, *4 (10th Cir. 1998)(unpublished table decision)).  "The Federal Rules of Civil Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'"  Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (quoting Fed. R. Civ. P. 7(a)).

"Striking a pleading or part of a pleading is a drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored."[4]

_____

[4]The Court explained in a 2012 opinion:

- 21 -

Estate of Gonzales v. AAA Life Ins. Co., 2012 U.S. Dist. LEXIS 67258, at *5 (quoting Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., 2010 U.S. Dist. LEXIS 1593, at *5)(internal quotation marks omitted).  "The exception to this principle is that a Court may 'choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court.'"  Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (citing In re Hopkins, 1998 U.S. App. LEXIS 24637, at *3 n.6 (10th Cir. 1998)(unpublished table decision)).

For example, in Skyline Potato, Co., Inc. v. Hi-Land Potato, Co ., Inc., 2012 U.S. Dist. LEXIS 184381 (D.N.M. 2012)(Browning, J.), the Court denied a motion to strike a letter filed with the Court, because the letter was not a pleading, and did not pertain to either party's legal defenses or arguments -- the letter expressed one party's position on whether the Court should rule on summary judgment motions pending at the close of a bench trial.  See 2012 U.S. Dist. LEXIS 184381, at *6. Similarly, in Great American Insurance Co. v. Crabtree, 2012 U.S. Dist. LEXIS 120096 (D.N.M. 2012)(Browning, J.), the Court denied a plaintiff's motion to strike exhibits attached to the defendant's motion to dismiss, because they were neither pleadings nor irrelevant.  See 2012 U.S. Dist. LEXIS 120096, at *18.  In Applied Capital, Inc. v. Gibson, 2007 U.S. Dist. LEXIS 97752 (D.N.M. 2007), the Court refused the plaintiff's request to strike a motion to dismiss because rule 12(f) applies only to pleadings and not to a motion to dismiss.  See 2007 U.S. Dist. LEXIS 97752, at *18.  In Estate of Stephanie Anderson v. Denny's, Inc., 2013 U.S. Dist. LEXIS 25737 (D.N.M.

---

If the Court struck from the record everything it did not consider on a motion, it would spend a lot of time polishing the record. Also, with the Court being paperless and everything appearing on CM/ECF, it is unclear what the procedural difference in the modern computer world is between striking some information and ignoring it.

Great Am. Ins. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500, at *18 (D.N.M. Aug. 23, 2012)(Browning, J.).

2013)(Browning, J.), the Court denied the plaintiff's request to strike a notice of completion of briefing for similar reasons.  See 2013 U.S. Dist. LEXIS 25737, at *12.

In Lane v. Page, the plaintiff filed a motion to strike parts of the defendants' answer, because it was "devoid of factual allegations and assert[ed] improper defenses."  272 F.R.D. at 588. Specifically, the plaintiff argued that the defendants' affirmative defenses should "put the plaintiff on notice of how the defense applies."  272 F.R.D. at 588.  The plaintiff therefore asked the Court not only to strike some of the defendants' answers, but also to "require the Defendants to amend their answers."  272 F.R.D. at 588.  The defendants argued that rule 8 does "not require them to provide factual support for their affirmative defenses" and contended that their answers adequately responded to the plaintiff's complaint.  272 F.R.D. at 588.  The Court

> decline[d] to extend the heightened pleading standard the Supreme Court established in Bell Atlantic v. Twombly and Ashcroft v. Iqbal to affirmative defenses pled in answers, because the text of the rules, and the functional demands of claims and defenses, militate against requiring factual specificity in affirmative defenses.

272 F.R.D. at 588.

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(Brorby, J.).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility]

from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)(Briscoe, J.)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)(McKay, J.)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (citing Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(Kelly, J.)(emphasis omitted). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much

of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(citations omitted)(quoting Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions. First, a defendant can argue an affirmative defense on a motion to dismiss where the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss. See Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009)); Robbins v. Oklahoma, 519 F.3d 1242. Second, the defendant can raise the defense on a motion to dismiss where the facts establishing the affirmative defense are apparent on the face of the complaint. See Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)(Hill, J.)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule."). The defense of limitations is the affirmative defense that the complaint's uncontroverted facts are most likely to establish. See 5 Charles Alan Wright et al., Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004). If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6). See Rohner v. Union P. R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955)(Wallace, J.); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945)(Phillips, J.); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).

The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute. The Tenth Circuit has not

clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(Major, J.)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, the plaintiff must plead facts establishing an exception to the affirmative defense).  It appears that, from case law in several Courts of Appeals, the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by refraining from pleading specific or identifiable dates.  See Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007)(Niemeyer, J.);   Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006)(Ripple, J.).  Although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice.  See Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 authorizes suits only against persons acting under color of state law.  See McCarty v. Gilchrist, 646 F.3d 1281, 1285 (10th Cir. 2011)("Section 1983 provides a federal civil remedy for the deprivation of any rights, privileges, or immunities secured by the Constitution by any person acting under color of state law.")(internal quotation marks omitted).

> [The] state action doctrine requires that "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and "the party charged with the deprivation must be a person who may fairly be said to be a state actor."

Stone v. Elohim, Inc., 336 F. App'x. 841, 842 (10th Cir. 2009)(unpublished)(quoting Johnson v. Rodrigues (Orozco), 293 F.3d 1196, 1202 (10th Cir. 2002)).  "Private persons may be said to act under color of state law if they are jointly engaged with state officials in the challenged action . . . . But private conduct that is not fairly attributable to the State is simply not actionable under § 1983,

however discriminatory or wrongful the conduct is." Hall v. Witteman, 584 F.3d 859, 864 (10th Cir. 2009).   A plaintiff can state a cognizable § 1983 claim against private citizens if he adequately alleges that the private citizen defendants conspired with the state actors to violate his federal rights. See Beedle v. Wilson, 422 F.3d 1059, 1073 (10th Cir. 2005).   "[W]hen a plaintiff attempts to assert the state action required for a § 1983 claim against private actors based on a conspiracy with government actors, 'mere conclusory allegations with no supporting factual averments are insufficient,' [instead] the plaintiff must specifically plead "facts tending to show agreement and concerted action."   Beedle v. Wilson, 422 F.3d at 1073.

## LAW REGARDING STATE ACTION AND CIVIL-RIGHTS CLAIMS

"As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments."   Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982).   To state a cause of action under 42 U.S.C. §§ 1983 and 1986 for alleged constitutional violations, the challenged conduct must constitute state action.   See Lugar v. Edmondson Oil Co., 457 U.S. at 935; Johnson v. Rodrigues (Orozco), 293 F.3d at 1202.   A plaintiff is required to show that: (i) he or she has been deprived of a right that the Constitution or laws of the United States protect; and (ii) that the putative state actor deprived him or her of the constitutional right while acting under color of any statute.   See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978).

The Supreme Court of the United States has articulated four different tests for courts to use in determining whether conduct by an otherwise private party is state action: (i) the private-function test; (ii) the nexus test; (iii) the joint-action test; and (iv) the symbiotic-relationship test.   See Johnson v. Rodrigues (Orozco), 293 F.3d at 1202-1203 (reviewing the various tests); Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995)(noting that "[a]pplication of the

state action doctrine has been characterized as one of the more slippery and troublesome areas of civil rights litigation.")(internal quotations omitted).

Under the public-function test, a court determines whether a private party has exercised "powers traditionally exclusively reserved to the State." Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974). The public-function test is difficult to satisfy, because, while many functions may be traditionally governmental, few are "exclusively" governmental functions, as the test requires. Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1456. The courts have found exclusive government functions to include holding elections, performing necessary municipal functions, and running nursing facilities. See Johnson v. Rodrigues (Orozco), 293 F.3d at 1203.

A court determines under the nexus test whether there is a sufficiently close nexus between the state and the challenged conduct, such that the conduct "may be fairly treated as that of the state itself." Jackson v. Metro. Edison Co., 419 U.S. at 351. A state may be held responsible for private conduct, only if the state "has exercised coercive power or has provided significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). "Private use of state-sanctioned private remedies or procedures does not rise to the level of state action. . . . But when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." Tulsa Professional Collection Servs, Inc. v. Pope, 485 U.S. 478, 486 (1988)(internal citations omitted).

State action exists under the joint-action test if the private party is a "willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980). Courts look to "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1453. "[I]f there is a substantial degree of cooperative action between state and private officials . . . or if there is overt and

significant state participation, in carrying out the deprivation of the plaintiff's constitutional rights, state action is present." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1454 (internal quotations and citations omitted).

Under the symbiotic-relationship test, state action is present if the state "has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity." Burton v. Wilmington Parking Authority, 365 U.S. 715, 862 (1961). "[E]xtensive regulation, receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the [state] and a private [party] that is required for state action." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1451.

## LAW REGARDING TITLE II OF THE ADA

Title II of the ADA, 42 U.S.C. §§ 12131-12165, commands that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of such services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Tenth Circuit requires that a plaintiff prove three factors to establish a claim under Title II: (i) that he or she is a qualified individual with a disability; (ii) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or the public entity otherwise discriminated against the plaintiff; and (iii) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. See Gohier v. Enright, 186 F.3d 1216, 1219 (10th Cir. 1999)(explaining that this general standard, which tracks the statute's language, is "plainly correct"). "Although a plaintiff may claim intentional discrimination, the Tenth Circuit has not yet articulated the essential elements of a claim of intentional discrimination under Title II of the ADA or detailed what a plaintiff must

plead at a minimum to establish such a claim." Braverman v. New Mexico, 2012 U.S. Dist. LEXIS

155676, at * 22 (D.N.M. 2012)(Browning, J.)(citing Tyler v. City of Manhattan, 118 F.3d 1400, 1405

(10th Cir. 1997)(Jenkins, J., dissenting), and Young v. City of Claremore, Okla., 411 F. Supp. 2d

1295, 1314 (N.D. Okla. 2005)).

     "Title II of the ADA does not provide for individual capacity suits against state officials."

Braverman v. New Mexico, 2011 U.S. Dist. LEXIS 138808, at *22 (D.N.M. 2011)(Browning,

J.)("Title II's plain language would therefore suggest that official may not be sued in their individual

capacity."). See J.H. ex rel. J.P. v. Bernalillo Cty., 2014 WL 3421037, at *99 (D.N.M.

2014)(Browning, J.)(stating that no claim against an official in his individual capacity exists under

the ADA's Title II), aff'd on other grounds, 806 F.3d 1255 (10th Cir. 2015).  The Tenth Circuit has

also held that "the ADA precludes personal capacity suits against individuals who do not otherwise

qualify as employers under the statutory definition."  Butler v. City of Prairie Village, Kan., 172

F.3d 376, 744 (10th Cir. 1999).  Several other United States Courts of Appeal have held that the

ADA "does not provide for individual liability, only for employer liability."  Mason v. Stallings, 82

F.3d 1007, 1009 (11th Cir. 1996).

     The United States Court of Appeals for the Eleventh Circuit has stated that "there is no

individual capacity liability under Title II of the ADA."  Badillo v. Thorpe, 158 F. App'x 208, 211

(11th Cir. 2005).  The United States Court of Appeals for the Seventh Circuit has "rule[d] directly

that only the employer, not individual employees, can be liable" under the ADA.  EEOC v. AIC Sec.

Inv., 55 F.3d 1276, 1279-82 (7th Cir. 1995).  See Busby v. City of Orlando, 931 F.2d 764, 772 (11th

Cir. 1991)("The relief granted under Title VII [of the Civil Rights Act, 42 U.S.C. § 2000e(b), which

defines 'employer' in the same way as the ADA,] is against the *employer*, not individual employees

whose actions would constitute a violation of the Act.")(emphasis in original).  The United States

Courts of Appeals for the Second, Sixth, and Eighth Circuits have also agreed that plaintiffs cannot maintain ADA suits against officials in their individual capacities.  See Carten v. Kent State Univ., 282 F.3d 391, 396-97 (6th Cir. 2002)(holding that a defendant must be held responsible in "his or her official capacity for violating Title II, which by its terms applies only to 'public entit[ies]'"); Garcia v. SUNY Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001)("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)("[T]he commissioners may not be sued in their individual capacities directly under the provisions of Title II. Title II provides disabled individuals redress for discrimination by a 'public entity.'"); Shabazz v. Texas Youth Comm'n, 300 F. Supp. 2d 467, 473 (N.D. Tex. 2003)(Lynn, J.)("The Court holds that Plaintiff is precluded from bringing an action under the ADA, just as he is under Title VII, against a person acting for an employer.").

## ANALYSIS

The Court's analysis proceeds as follows.  Because the Correctional Facility Defendants have withdrawn their opposition to the First MTS, the Court grants the Motion to Strike the Oviedo Answer's and the Amended Geo Answer's Sixteenth Affirmative Defenses.  The Court denies the Motion to Strike the Corizon Answer's Tenth Affirmative Defense, however, because the Court is not convinced that "under no set of circumstances could the defense[] succeed." Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. at 1343 (internal quotation marks and citation omitted). Finally, the Court grants the Motion to Dismiss Count IX as against Corizon Health and Dr. Sisneros, because it fails "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

I. **THE COURT GRANTS THE FIRST MOTION TO STRIKE.**

The Correctional Facility Defendants have withdrawn their opposition to the First MTS.  See Notice of Withdrawal at 1.  Because the First MTS is now unopposed, the Court grants the motion to strike the Oviedo Answer's and the Amended Geo Answer's Sixteenth Affirmative Defenses, which state: "These affirmative defenses are preliminary, without the benefit of all the facts underlying or pertaining to Plaintiff's claims.  These Defendants reserve the right to amend and assert additional affirmative defenses as discovery progresses."  Oviedo Answer ¶¶ 16, at 20; Amended Geo Answer ¶¶ 16, at 22.   See Tr. at 10:14-19 (Court)(stating that, in light of the Correctional Facility Defendants' withdrawal of opposition, the Court will grant the First MTS).

II. **THE COURT DENIES THE SECOND MOTION TO STRIKE.**

S. Tavasci moves to strike the Corizon Answer's Tenth Affirmative Defense, see Second MTS at 1, which states that "[t]hese affirmative defenses are preliminary, without the benefit of all the facts underlying or pertaining to Plaintiff's claims, and therefore Defendant reserves the right to amend and assert additional affirmative defenses as discovery progress," Corizon Answer ¶ 10, at 30.  S. Tavasci contends that Corizon Health and Dr. Sisneros must "articulate with particularity affirmative defenses," Second MTS at 1, and that rule 15 prohibits "reserv[ing] unstated affirmative defenses because such reservations fail to give Plaintiffs fair notice," Second MTS Reply at 4.  In response, Corizon Health and Dr. Sisneros contend that the subject paragraph is not an affirmative defense, but rather a reservation of their "right to amend."  Second MTS Response at 2.  They insist that they "have no intention of subverting the Rules," Second MTS Response at 2, and that they will comply with the procedures in rule 15 if they add an affirmative defense in the future, see Tr. at 10:4-7 (Gutterson).

"[M]otions to strike under Rule 12(f) generally are disfavored." Estate of Gonzales v. AAA Life Ins. Co., 2012 U.S. Dist. LEXIS 67258, at *5.  To strike an affirmative defense, "its legal insufficiency must be 'clearly apparent.'" Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. at 1343 (citations omitted).  A court must be convinced that "under no set of circumstances could the defense[] succeed." Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. at 1343 (internal quotation marks and citation omitted).  See Estate of Gonzales v. AAA Life Ins. Co., 2012 U.S. Dist. LEXIS 67258, at *5 ("Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy.")(citation omitted).  Even when the defense presents a "purely legal" question, such a question is "properly . . . viewed as determinable only after discovery and a hearing on the merits." Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. at 1343 (citations and internal quotation marks omitted).  Thus, a court should grant a motion to strike only those defenses pursuant to which it is "'beyond cavil'" that a defendant could not prevail. Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. at 1343 (citations omitted).

Here, it is not "'clearly apparent,'" Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. at 1343 (citations omitted), that the Corizon Answer's Tenth Affirmative Defense is legally insufficient.  Indeed, whatever the label, the subject paragraph is not even an affirmative defense -- it is simply a statement reserving Corizon Health and Dr. Sisneros's right to amend their defenses in the future.  See Lane v. Page, 272 F.R.D. at 601 ("'A reservation of unpled defenses is not a defense of any kind, much less an affirmative one.'")(quoting Mission Bay Ski & Bike, 2009 Bankr. LEXIS 2495, at *5 (U.S. Bankr. N.D. Ill. 2009)).  At this point in the litigation, it is not "beyond cavil" that such a reservation could prevail "'under no set of circumstances.'" Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. at 1343 (citations omitted).  Additional discovery, for example, may uncover facts that could lead Corizon Health and Dr. Sisneros to assert new affirmative defenses.

Because discovery is ongoing, the Corizon Answer's defenses are not yet sufficiently developed to "warrant granting a preemptive motion to strike."  Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. at 1344.

S. Tavasci contends, however, that the language of the Corizon Answer's Tenth Affirmative Defense "fail[s] to give Plaintiffs fair notice," Second MTS Reply at 4, because it is not "articulate[d] with particularity," Second MTS at 1.  She reasons that fairness requires that affirmative defenses, like claims, provide "'enough notice that [they have] a plausible, factual basis.'"  First MTS Reply at 2-3 (quoting Castillo v. Roche Labs., Inc., 2010 U.S. Dist. LEXIS 87681, at *2).  The Court has previously rejected this precise argument.  In Lane v. Page, the plaintiff moved to strike affirmative defenses from the defendant's answer because they were "devoid of factual allegations."  272 F.R.D. at 588.  The plaintiff argued that such defenses were unfair, because they failed to "put the plaintiff on notice of how the defense applies."  272 F.R.D. at 588.  The Court rejected this argument, holding that the heightened pleading standards in Twombly and Iqbal do not apply to affirmative defenses.  Lane v. Page, 272 F.R.D. at 588.  The Court reasoned that functional differences between complaints and answers -- such as the limited time defendants have to file their answers -- "militate against requiring factual specificity in affirmative defenses."  Lane v. Page, 272 F.R.D. at 588.  See id. at 596 (noting that plaintiffs have years to prepare complaints, while defendants have just twenty-one days to file their answers)(citing Fed. R. Civ. P. 12(a)(1)(A)(i)).  The Court also reasoned that "motions to strike, in most cases, waste everyone's time," and that applying Twombly and Iqbal to affirmative defenses would simply "invite many more motions to strike, which achieves little."  Lane v. Page, 272 F.R.D. at 596.  S. Tavasci is correct that other courts have reached the opposite conclusion and applied Twombly/Iqbal to affirmative defenses.  See, e.g., Castillo v. Roche Labs, Inc., 2010 U.S. Dist. LEXIS 87681, at *3;

Palmer v. Oakland Farms, Inc., 2010 U.S. Dist. LEXIS 63265, at *5 (W.D. Va. 2010).  Still other courts, as S. Tavasci acknowledges, have declined to impose such a standard.  See, e.g., Holdbrook v. SAIA Motor Freight Line, LLC, 2010 U.S. Dist. LEXIS 29377, at *2 (D. Colo. 2010).  S. Tavasci ultimately proffers no compelling reason why the Court should deviate from its previous resolution of the issue in Lane v. Page -- aligning with courts in the latter category -- and join courts in the former category in imposing a heightened pleading standard on affirmative defenses.  Here, as in Lane v. Page, the Court declines to do so.

It is understandable why the Court's reasoning in Lane v. Page might be read to compel the Court to grant the Second MTS here.  See Notice of Withdrawal at 1 (withdrawing the Correctional Facility Defendants' opposition to the First MTS based on their reading of Lane v. Page).  There, the Court ultimately struck two improperly-labeled "affirmative defenses" that stated -- similarly to the affirmative defenses at issue here -- that the defendants "reserve[d] the right to assert additional affirmative defenses."  Lane v. Page, 272 F.R.D. at 601.  But Lane v. Page is distinguishable from this case in important respects.  In Lane v. Page, the Court ordered the defendants to amend their answer because they failed, contrary to the requirements of rule 8(b), to respond to allegations in the complaint.  See 272 F.R.D. at 601-602.  The Court struck the disputed affirmative defenses as well, determining that, since the defendants were already obligated to amend their answer, they should use the opportunity to fix the reservation-of-rights language too.  See Lane v. Page, 272 F.R.D. at 603.  Moreover, unlike Corizon Health and Dr. Sisneros, there is no indication that the defendants in Lane v. Page agreed to comply with rule 15 should they seek to add new affirmative defenses.  In any case, the Court acknowledges that it may have granted the motion to strike in Lane v. Page because it was somewhat swept up in its order to amend.

The Court affirms its conclusion in Lane v. Page that "'[a] reservation of unpled defenses is not a defense of any kind, much less an affirmative one.'"  272 F.R.D. at 601 (quoting Mission Bay Ski & Bike, 2009 Bankr. LEXIS 2495, at *5).  It is not.  Where a defendant reserves unpled defenses yet also agrees to comply with rule 15, however, a motion to strike may be inappropriate.  In such a case, the Court cannot conclude that "'under no set of circumstances'" would the reservation of unpled defenses prevail.  Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. at 1343 (citations omitted).  At least in the circumstances of this case, where Corizon Health and Dr. Sisneros have agreed to comply with rule 15 and where there are no other alleged defects with the Corizon Answer, the Court will deny a motion to strike a reservation of unpled affirmative defenses.

S. Tavasci's principal concern, it appears, is that the Corizon Answer's Tenth Affirmative Defense is designed to subvert rule 15's procedural requirements for amending pleadings.  See First MTS Reply at 5.  She argues that "the attempt to reserve a right creates uncertainty about . . . whether [Corizon Health and Dr. Sisneros] will be required to comply with Fed. R. Civ. Pro. Rule 15."  First MTS Reply at 5.  See Tr. at 9:1-3 (Carpenter)(arguing that rule 15 should govern amendments).  This concern is easily assuaged.  Corizon Health and Dr. Sisneros have repeatedly stated that that they will comply with rule 15 if they seek to amend their answer to add an affirmative defense.  See Second MTS Response at 2 (stating that they "have no intention of subverting the Rules"); Tr. at 10:4-7 (Gutterson)(agreeing with the Court that they will have to comply with rule 15).  The Court will likewise require compliance with rule 15, notwithstanding the catch-all language in the Tenth Affirmative Defense.  See Tr. at 11:1-6 (Court)(stating that the Court will "make it clear that they're going to have to comply with Rule 15.").  As S. Tavasci conceded at the hearing, a requirement that both parties comply with the same motion practice pursuant to rule 15

will "cure the issue."  Tr. at 6:12-17 (Carpenter).  See id. at 9:11-15 (Carpenter)(stating that application of rule 15 would put the parties on the "same footing.").

In light of the above analysis, the Court denies the Second MTS.  The subject language in the Corizon Answer is not an affirmative defense at all, but rather a reservation of Corizon Health and Dr. Sisneros' right to amend in the future.  Consistent with its decision in Lane v. Page, the Court declines to require such defenses to be pled with more factual specificity.  Moreover, the Court concludes that the broad language of the Tenth Affirmative Defense poses little risk of prejudice to S. Tavasci, because the Court will require future amended pleadings to comply with the procedural requirements of rule 15.  Because the Court will not allow Corizon Health and Dr. Sisneros to amend without complying with rule 15, and because Corizon Health and Dr. Sisneros could assert more affirmative defenses as discovery progresses, the Court is not convinced that "'under no set of circumstances could the [Tenth Affirmative Defense] succeed.'"  Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F. Supp. at 1343 (citation omitted).

III.   **THE COURT GRANTS THE MOTION TO DISMISS COUNT IX -- THE CLAIM FOR ALLEGED DISCRIMINATION IN VIOLATION OF THE ADA.**

Corizon Health and Dr. Sisneros move to dismiss Count IX of the Complaint as against them for failure to state a claim pursuant to rule 12(b)(6).  See MTD at 1.  Count IX alleges that The Geo Group, the Correctional Facility, and Corizon Health discriminated against D. Tavasci in violation of the ADA's Title II.  See Complaint ¶¶ 143-153, at 21-23.  Corizon Health and Dr. Sisneros contend that they cannot be liable for this claim, because the ADA does not apply to private corporations that operate private prisons or to their employees.  See MTD at 1.  At the hearing, S. Tavasci conceded that, under Tenth Circuit precedent and the Court's prior rulings, the "ADA precludes personal capacity suits against individual[s] who do not otherwise qualify as employers [under] the statutory definition."  Tr. at 12: 11-17 (Court).  See Butler v. City of Prairie Village, Kan., 172 F.3d at 744

(holding that the ADA "precludes personal capacity suits"); Braverman v. New Mexico, 2011 U.S. Dist. LEXIS 138808, at *22 ("Title II of the ADA does not provide for individual capacity suits against state officials"). See also 42 U.S.C. § 12111(5)(A) (defining "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees"). S. Tavasci therefore withdrew her ADA claim against Dr. Sisneros. See Tr. at 14:4-7 (Carpenter). S. Tavasci maintains, however, that Corizon Health is liable under the ADA's Title II as an "instrumentality of the state." Tr. at 14:8-10 (Carpenter). Accordingly, the Court must determine whether Corizon Health may be held liable under the ADA's Title II for the allegations in Count IX of the Complaint.

In evaluating a rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true the complaint's well-pled allegations and view those allegations in the light most favorable to the nonmoving party. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. To survive dismissal under rule 12(b)(6), a complaint must contain sufficient allegations of fact "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (citing Twombly, 550 U.S. at 556). A plaintiff, in short, must "'nudge[] their claims across the line from conceivable to plausible.'" Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1144 (10th Cir. 2013)(quoting Twombly, 550 U.S. at 570)(alteration in original). Here, the Court must assess whether Count IX of the Complaint states a "plausible" claim, Twombly, 550 U.S. at 570, namely, whether there is a "reasonable inference" that Corizon Health is liable under the ADA's Title II, Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). To resolve this issue, the Court turns to the ADA's text.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of such services,

programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA defines "public entity" as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority[.]"  42 U.S.C. § 12131.  The only potential enumerated category that might apply to Corizon Health is "instrumentality of a State or States or local government."  42 U.S.C. § 12131(B).  The question, therefore, is whether Corizon Health, a private corporation that managed the medical facility at the Correctional Facility, is an instrumentality of the State of New Mexico with respect to the Correctional Facility, thereby subject to the ADA's Title II as a "public entity."  The Court concludes that it is not a public entity.

The Tenth Circuit and the "the overwhelming majority of [] courts . . . hold that Title II of the ADA does not generally apply to private corporations that operate prisons."  Phillips v. Tiona, 508 F. App'x at 754.  In Phillips v. Tiona, the Tenth Circuit considered whether a private, for-profit prison management corporation and three of its employees were liable pursuant to the ADA's Title II for failure to accommodate an inmate's medical needs arising out of a broken leg.  See 508 F. App'x at 748.  The Tenth Circuit concluded that a private corporation that operates a prison is not an "instrumentality" of the state under the ADA.  Phillips v. Tiona, 508 F. App'x at 754.  The Tenth Circuit reasoned that, when read in the context of the statute, "'instrumentality' refers to a traditional government unit or one created by a government unit."  Phillips v. Tiona, 508 F. App'x at 754.  Accordingly, the Tenth Circuit held that, because the prison management corporation was neither a "traditional government unit" nor "created by a government unit," it was not liable under the ADA.  508 F. App'x at 754.  This reasoning compels the same conclusion with respect to Corizon Health.

S. Tavasci objects to this conclusion, arguing that the contract between the New Mexico Department of Corrections -- undoubtedly a government unit -- and Corizon Health "mandates that Corizon is liable for [] ADA violations."  MTD Response at 8.  This argument is unpersuasive.  In Phillips v. Tiona, the Tenth Circuit stated that "'[a] private private contractor does not . . . become liable under Title II merely by contracting with the State to provide governmental service, essential or otherwise.'"  508 F. App'x at 748 (quoting Edison v. Douberly, 604 F.3d at 1310).  S. Tavasci advances an alternative theory, arguing that Corizon Health should be deemed a "state actor" liable under the ADA because it operates under "color of law."  MTD Response at 4.  S. Tavasci argues that the Tenth Circuit has delineated four tests to determine whether private parties should be treated as state actors, and that, under any of these tests, Corizon Health qualifies as a state actor.  See MTD Response at 4-7 (listing the four tests as "(1) the public function test, (2) the nexus test, (3) the symbiotic relationship test and (4) the joint action test.").  This argument is likewise unpersuasive.  As the Court explained at the hearing, the issue is not whether Corizon Health is a "state actor" under some legal fiction, but whether the ADA authorizes suits pursuant to Title II against non-state entities.  Tr. at 12:23-13:3 (Court).  Whether Corizon Health qualifies as a state actor may be relevant to a claim asserted pursuant to 42 U.S.C. § 1983, but it is inapposite for purposes of ADA Title II, which applies only to a "traditional government unit or one created by a government unit." Phillips v. Tiona, 508 F. App'x at 754.

Accordingly, the Court grants the motion to dismiss Count IX as against Corizon Health and Dr. Sisneros, because it fails "to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  With respect to Dr. Sisneros, the ADA's Title II "precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition." Butler v. City of Prairie Village, Kan., 172 F.3d at 744.  Dr. Sisneros is an employee, not employer,

and, thus, S. Tavasci cannot assert Count IX against Dr. Sisneros.  In terms of Corizon Health, the Tenth Circuit has squarely held that a private corporation that provides services to a prison is not an "instrumentality" of the state under the ADA.  <u>Phillips v. Tiona</u>, 508 F. App'x at 754.  Corizon Health is not an "instrumentality of the state," because it is neither a "traditional government unit" nor "created by a government unit." <u>Phillips v. Tiona</u>, 508 F. App'x at 754.  Thus, both Dr. Sisneros and Corizon Health are entitled to dismissal of Count IX.

      **IT IS ORDERED** that: (i) Plaintiffs' Opposed Motion to Strike Defendants Geo, Horton, Aguilar and Oviedo's Sixteenth Affirmative Defenses, filed June 29, 2016 (Doc. 25), is granted; (ii) Plaintiff's Opposed Motion to Strike Defendants Corizon and Sisneros' Tenth Affirmative Defense, filed June 30, 2016 (Doc. 26), is denied; and (iii) Defendant Corizon and Dr. Sisneros' Motion to Dismiss ADA Claims for Failure to State a Claim Upon Which Relief Can be Granted, filed July 19, 2016 (Doc. 38), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Frances Crockett Carpenter
Law Office of Frances Crockett
Albuquerque, New Mexico

    *Attorney for Plaintiff Sophie Tavasci*

Chance A. Barnett
Lorri Krehbiel
Krehbiel & Barnett, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Bradford Cambron and Randal Brown*

Remo E. Gay, Jr.
Remo E. Gay & Associates, P.C.
Albuquerque, New Mexico

    *Attorney for Defendant Rob Kamermans*

Neil R. Blake
Quiana Aurelia Salazar-King
Scott F. Stromberg
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant New Mexicare, Inc.*

April D. White
Yenson, Allen & Wosick, P.C.
Albuquerque, New Mexico

    *Attorney for Defendants The GEO Group, Inc., Vincent Horton, Christopher Aguilar, M.*
    *Mireles, and Mario Z. Oviedo*

Jessica Singer
Nicole M. Charlebois
M. Clea Gutterson
Chapman and Charlebois, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Corizon Health, Inc. and Dr. Sisneros*

Antoinette Lucero

    *Defendant Pro Se*